## SANGER v. SMITH.†

(Court of Civil Appeals of Texas. Feb. 11, 1911. Rehearing Denied March 4, 1911.)

1. LANDLORD AND TENANT (§ 159*)—COVENANT TO REPAIR—ACTION FOR BREACH—INSTRUCTIONS.

In an action by a tenant against the landlord for breach of covenant to repair, it was charged that if defendant failed or neglected to make the roof rainproof as agreed, and so continued and for such length of time that plaintiff, in exercise of ordinary care, ought reasonably to have concluded that defendant did not intend to repair, it became his duty to protect his property. *Held*, in view of evidence that defendant made several ineffectual attempts to repair and to stop leaks, and plaintiff repeated his request several times thereafter, till a new roof was put on, that the charge was not erroneous as in effect telling the jury that the duty to use ordinary care to protect his property and prevent injury thereto could not devolve on him till such time as he ought reasonably to have concluded she did not intend to repair.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 573, 611; Dec. Dig. § 159.*]

2. TRIAL (§ 296*)—INSTRUCTIONS—CURE.

If such charge was erroneous in the respect stated, the error was rendered harmless by a following instruction that if, under similar circumstances, a reasonably prudent person, exercising ordinary care, would have repaired at his own expense or made greater efforts than plaintiff did to protect his property, defendant would not be liable, and not to find that plaintiff failed to use ordinary care if, in exercise of ordinary care, he ought not to have concluded defendant would not fix the roof, and remained expecting it would be repaired, and made such efforts to protect his property as a reasonably prudent person, in exercise of ordinary care, would have made under similar circumstances.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–718; Dec. Dig. § 296.*]

3. DAMAGES (§ 62*)—FAILURE OF LANDLORD TO REPAIR—TENANT'S DUTY TO PREVENT INJURY.

Generally speaking, a tenant must at all times exercise ordinary care to prevent injury by failure to keep a covenant to repair, and he cannot recover for damage he could have avoided by such care.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–132; Dec. Dig. § 62.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.

Where the substance of a requested charge is given, there is no error in its refusal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. LANDLORD AND TENANT (§ 159*)—COVENANT TO REPAIR—DAMAGES FOR BREACH.

The general rule is that, on breach of covenant to repair, the measure of damages is the difference between rental value of the premises as they were and what it would have been if they had been put and kept in repair.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 573, 611; Dec. Dig. § 159.*]

6. LANDLORD AND TENANT (§ 159*)—COVENANT TO REPAIR—DAMAGES FOR BREACH.

Where a lessee used a building to its full capacity, notwithstanding a leaky roof of which he complained, transacting therein the business contemplated when he leased it, with practically the same profitable result that would have been realized had the covenant to repair been strictly kept, he is entitled only to the damage done to his property therein, and a charge, allowing lessee to recover also in such case the difference between the rental value of the premises as they were and what it would have been if the covenant had been performed, was erroneous as authorizing double damages.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 573, 611; Dec. Dig. § 159.*]

Talbot, J., dissenting in part.

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by Morton J. Smith against Mrs. Cornelia Sanger. From a judgment for plaintiff, defendant appeals. Reformed and affirmed.

Coke, Miller & Coke, for appellant. Lively, Nelms & Adams and Spence, Knight, Baker & Harris, for appellee.

TALBOT, J. The appellee brought this suit against the appellant January 9, 1908, alleging, in substance: That on April 29, 1905, he entered into a lease contract with appellant, defendant below, by the terms of which appellant demised him for a term of

† Writ of error denied by Supreme Court April 12, 1911.

five years from said date, at a rental of $150 per month, the premises known as 311–313 Jackson street, Dallas, Tex., being 50x130 feet of ground, with a two-story house thereon, to be used as a livery stable, which premises appellee was then, and for many years had been, occupying as a livery stable. That the roof of said premises, at the date of said lease, was in bad condition, and that by the terms thereof appellant contracted to repair the same and make it rainproof. That in pursuance of said covenant to repair appellant had workmen to go upon said roof and pretend to repair the same, and appellee, believing that same had in fact been repaired, placed in said building a large amount of personal property incident to a livery stable business, consisting of a large number of different kinds of buggies, wagons, and other vehicles of the aggregate value of $14,905; a large number of sets of harness, bridles, saddles, horse blankets, bedroom and office furnishings and fixtures of the aggregate value of $1,480, and also a large quantity of feed for horses kept in said stable. That immediately after plaintiff took possession and commenced to occupy said building he discovered that said roof had not been repaired in such a manner as to make the same rainproof, but that, on the contrary, the same was in such a condition that each and every time it rained the water poured in through said roof and in and upon the buggies and vehicles of plaintiff and upon his harness and upon the buggies and harness of his customers, kept and stored in said building by plaintiff, in such a manner and in such quantities and with such frequency as to keep the rafters, flooring, and walls in said building and the buggies and vehicles and harness, saddles, feed, furnishings, and fixtures in said building in a continuous condition of moisture, and that the effect of said moisture and said water upon said buggies and vehicles and harness, saddles, feed, furnishings, and fixtures was such as to result in great damage to said buggies and vehicles and harness and other property. That said moisture and said water resulted in the peeling off of the paint and varnish on the buggies and vehicles and the swelling and warping of the beds and wood used in the construction of said vehicles and in the bursting and falling to pieces of said buggies and vehicles and in the decay and warping of the tops and leather and rubber tires used in the construction of said vehicles, injury to said other property, rendering all of said buggies and vehicles of no value, and damaging same and said other property, all to plaintiff's damage in the sum of $7,500. That said moisture and water had the effect upon the harness, saddles, feed, furnishings, and fixtures of plaintiff kept in said house, of mildewing same and rotting and decaying same and otherwise damaging same and rendering same useless and of no value and the repair of same necessary,

to plaintiff's damage in the sum of $1,500. That the rental value of said premises, in their bad state of repair, aforesaid, was not to exceed $50 per month. That, had same been repaired, same would have been reasonably worth $250; appellee's damage thereby being $200 per month for said interval. Plaintiff further averred that he had often complained to defendant about the condition of said roof, and that at least once in each month from the date of his occupancy of said building he had notified defendant through her agent of the condition of said roof, and of the damage resulting to plaintiff therefrom, and that on each and every occasion defendant promised that she would immediately repair said roof and put same in a rainproof condition as she had agreed and contracted theretofore to do. That plaintiff relied upon each and all of said promises, but defendant failed to repair said roof and put the same in a rainproof condition, to plaintiff's damage in the sum of $18,950. Appellant answered by a general demurrer and a general denial, and for special answer, among other things, averred that all or the greater part of the damage alleged to have been sustained by plaintiff could have been avoided by him by the use of reasonable care and diligence in the protection and care of the property that he claims to have had upon the leased premises; that, if said roof was in the condition alleged by plaintiff, the facts concerning the same were well known to him, or could have been ascertained by the use of reasonable diligence; that, notwithstanding the alleged condition of said roof, he made no effort to repair same, though it could have been done at small and reasonable cost, and made no effort to protect the property therein from the effect of leaks, if any there were, but continued to place on said premises and expose to said leaks the property that he claims to have been damaged; wherefore defendant avers that plaintiff's damage, if any he sustained, was brought about by reason of his own want of care, and that his negligence contributed largely, if not solely, to the injuries that he complains of. The trial resulted in a verdict and judgment for appellee for $1,-500 as the difference between the rental value of the premises in their bad state of repair and such value had the repairs agreed to be made been made, and $1,750 injury to personal property placed upon the premises. The defendant's motion for new trial having been overruled, she perfected an appeal to this court.

The evidence justifies the following conclusions of fact: On April 29, 1905, the appellant, Mrs. Sanger, leased to the appellee, Smith, for a term of five years, at a rental of $150 per month, the premises described in plaintiff's petition to be used as a livery stable. In the lease contract, Mrs. Sanger, among other things, agreed to repair the roof of the building immediately and make the

same rainproof. Smith was in possession of and occupying the premises at the time the lease of April 29th was executed, as a livery stable, and had been for some time prior thereto, under a former lease. A few days after the date of the lease contract, a rain fell, and Smith notified the agent of Mrs. Sanger that the roof leaked badly and that he wanted it repaired. Three several ineffectual attempts, during a period of perhaps three or four months immediately following the date of the lease, were made to repair the roof in compliance with Mrs. Sanger's covenant. No further effort to repair the roof was made; but in December, 1907, Mrs. Sanger caused a new roof to be put on the building and the leaks ceased. During the times the attempts to repair the roof were being made, and during the entire time the leaks were occurring, the appellee, Smith, continued to occupy the building and to keep his property in it. He made no effort to repair the roof himself, or to secure other quarters, but complained to the agent of Mrs. Sanger from time to time of the leaks. He paid the monthly rental of $150 promptly and says that on each occasion he requested, until the new roof was put on the building, that the roof be repaired and the leaks stopped, and received promises that it would be done. The damage sustained by the appellee to his personal property on account of the appellant's failure to repair the roof as she covenanted to do was, as found by the jury, $1,750, and appellee did not fail to use that degree of care or diligence to protect his property from injury that the law imposed upon him.

The second assignment of error complains of the following portion of the court's charge: "If you find that the defendant failed or neglected to make said roof rainproof, as she agreed to do, and continued in such failure or neglect, if any, for such a length of time that plaintiff, in the exercise of ordinary care, ought reasonably to have concluded that she did not intend to make such repairs, then it became his duty to take such steps to protect his property from injury as a reasonably prudent person would have taken in the exercise of ordinary care under similar circumstances." The contention is that this charge, in effect, told the jury that the duty to use ordinary care to protect his property and prevent injury thereto did not devolve upon appellee until such a time as he ought reasonably to have concluded that Mrs. Sanger did not intend to repair the stable; whereas, if Mrs. Sanger failed to perform her covenant to repair, appellee was at all times under legal obligation to exercise ordinary care to prevent injury to his property as a result of such failure, and cannot recover for any damage that he could have avoided by the use of such care. The majority of the court holds that, under the evidence, the charge complained of is not erroneous, or that if, standing alone, it is,

the vice in it is cured by the other portion of the paragraph of which it is a part. It is not denied that, generally speaking, it is correct to say that a tenant is at all times under legal obligation to exercise ordinary care to prevent injury to his property by reason of the failure of his landlord to keep a covenant to repair, and that no recovery against the landlord can be had for any damage the tenant could have avoided by such care, and a charge announcing a different rule would, ordinarily, be erroneous. The charge in question, however, is immediately followed by the following instruction: "If, under similar circumstances, a reasonably prudent person, exercising ordinary care, would have repaired said roof at his own expense, or would have made greater efforts to protect his personal property from injury than did plaintiff, if he made any such efforts, then defendant would not be liable for such damage, if any, as would have been thereby avoided; and in fixing your verdict herein if you find for the plaintiff you will not allow to plaintiff any sum for damage he could have so prevented. If, however, in the exercise of ordinary care plaintiff ought not to have concluded that defendant would not fix said roof and remained there expecting that same would be repaired, and if he made such efforts to protect his property from injury as a reasonably prudent person in the exercise of ordinary care would have made under similar circumstances, then you will not find that plaintiff in these respects failed to use ordinary care." It is believed by a majority of the court that the language, "under similar circumstances," used in that portion of the paragraph of the charge just quoted, has reference to the circumstances of the case and not to the circumstances referred to in the preceding portion of the charge of which complaint is made; that the court in telling the jury, in immediate connection with the instruction complained of, that "if, under similar circumstances, a reasonably prudent person, exercising ordinary care, would have repaired said roof at his own expense, or would have made greater efforts to protect his personal property from injury than did plaintiff, * * * then defendant would not be liable for such damage, if any, as would have been thereby avoided"—correctly stated the duty which the law imposed upon the appellant to protect his property from injury and rendered harmless any error there may be in the charge assailed.

The third assignment complains of the court's refusal to give, at appellant's request, the following charge: "The law makes it the duty of a tenant, or any one else, to use all reasonable efforts to save himself from damage that may result to him from the act of another. It was the duty of Mr. Smith to use all reasonable efforts to protect his property in the barn from injury from leaks, and for any injury that he could have avoided

by the use of reasonable care and diligence he cannot recover in this case." The majority of the court think there was no error in refusing this charge, for the reason that it was given in substance in the fifth paragraph of the general charge just discussed. The assignment is therefore overruled.

The fifth assignment of error complains of the court's refusal to give the following special charge requested by the appellant, namely: "If Mrs. Sanger failed to repair the roof, as agreed, for an unreasonable time, it was Mr. Smith's duty to either repair the roof, if it could be done at a reasonable cost, or to move out of the premises; and, in case of removal, he would not be responsible to Mrs. Sanger for any further rent." We are inclined to think there was no error in refusing this charge. It is true that many cases may be found in which it has been held that "where the repairs are slight and inexpensive, and the consequences of a failure serious, the tenant may make the repairs and charge the cost to the owner." There are also cases to the effect that under certain circumstances it is the tenant's duty to move out and not remain in the leased building to suffer continued loss.

There are, perhaps, two good reasons why neither of the rules above referred to apply in this case:

First. The evidence shows that the repairs necessary to stop the leaks, of which the appellee complained, were not slight and inexpensive, but were of an important and permanent character. The evidence also shows, practically without dispute, that appellant made several ineffectual efforts to repair the roof by patching it, and not until a new roof was put on the building did the leaks cease. It is well settled, says Mr. Jones, in his valuable work on Landlord and Tenant (section 410), that a tenant is not bound to make permanent and important repairs which the landlord has contracted to make, but may recover his damages for the landlord's failure to make them.

Second. The evidence tends to show that, during the time the appellee claims his property was being damaged by the leaky roof, appellant was either endeavoring to make the repairs or promising to do so, and the charge in question "entirely ignores the appellee's state of mind, as testified to by him, to the effect that he was constantly expecting appellant to make the repairs contracted for," and cast upon appellee the absolute duty to make the repairs or move out, notwithstanding it appeared practically beyond controversy that when appellant ceased her efforts to repair the roof the leaks could not be stopped, except by permanent repairs in the nature of a new roof. So long, at least, as the appellant indicated by her efforts to do so that she intended to remedy the defect in the roof, appellee could not be charged with knowledge that such efforts would be unavailing, and by her repeated promises thereafter to repair it may be said that she induced the appellee to remain in the building. The charge ignored this latter phase of the case, and on the whole we think the charge as framed was properly refused. Miller v. Sullivan, 77 Kan. 252, 94 Pac. 266, 16 L. R. A. (N. S.) 737.

On the measure of damages the court charged the jury as follows: "If you find for plaintiff, you will allow him such a sum of money as will reasonably compensate him for the damage directly resulting to him, if any, from the defective condition of said roof, if it was defective, including therein the difference, if any, between the rental value of the building, as it actually was, and what it would have been worth, if the contemplated repairs had been made, from time the repairs should have been made up to the time the new roof was placed on said building, and including, further, the direct pecuniary damage, if any, to personal property of plaintiff in said building, due to same not having been made reasonably rainproof, if it was not made reasonably rainproof." This charge is objected to on the ground that it authorized a recovery of double damages, in that it directed the jury, in the event they should find for the appellee, to allow him both the difference between the rental value of leased premises without the repairs contracted to be made, and the rental value thereof if the contemplated repairs had been made, and the damage to the personal property of plaintiff situated in said building due to the failure of the defendant to make said repairs. We think the objection well taken. The general rule is that, on a breach of covenant by the landlord to make repairs, the measure of damages to which the lessee is entitled is the difference between the rental value of the premises as they were, and what it would have been if the premises had been put and kept in repair. 24 Cyc. 1097. This rule, however, has not been universally applied. On the contrary, numerous cases may be found in which it is held that where a tenant's goods were injured because of the failure of a landlord to make repairs which he had contracted to make, in the absence of evidence showing want of ordinary care on the part of the tenant to protect his goods, he may recover for all the damage done to such goods. Such has been the ruling, as we understand it, in those cases where the difference in the rental value of the premises with the repairs and the rental value without them was deemed inadequate to fairly compensate the tenant for the loss sustained by reason of the breach of the covenant to repair, and establishes an exception to the general rule. The case at bar falls, we think, within that class excepted out of the general rule. We concur in the view taken by counsel for appellant that the exception is not a supplement, but a substitute, and that, where the general rule is sufficient and applicable, it should be applied; where it is not, the exception or substitute should be applied. In this case the

court applied both the general rule and the exception. In this we think the court erred. Malicious wrongs aside, the purpose of the law, is to give such damages as will fairly compensate for the injury suffered.

Now, what will fairly compensate the appellee for the injury sustained by him as a result of the failure of the appellant to perform her covenant to repair? The evidence fairly shows, as we understand it, that he used the leased building, notwithstanding the leaky roof of which he complains, to its full capacity, transacting therein the business he contemplated transacting when he leased it, with practically the same profitable result as would have been realized had the covenant to repair been strictly kept. The transaction of his business under the leaky roof simply cost him the damage done to the buggies, wagons, harness, feed, and other personal property put in the stable, and the extent of this damage the jury said was $1,750. The payment of this amount will therefore make him whole and recompense him for the injury he suffered by reason of the appellant's failure to repair the roof as she agreed to do. In reaching this conclusion we have not failed to examine and consider the case of Kohne v. White, 12 Wash. 199, 40 Pac. 794. That was an action by the lessee for a breach of covenant to repair resulting in damage to furniture and rendering the premises unfit for use as a boarding house, and the decision of the case turned on the improper admission of certain testimony. However, in discussing objections urged to the trial court's instructions to the jury, to the effect that the measure of damages in the case was such sum as would compensate the plaintiff for all damage she sustained to her furniture by reason of the defendant's failure to repair and the difference between the rental value of the building as it actually was and what it would have been worth if the defendant had made the repairs, as the lease required, the Supreme Court of Washington expressed the opinion that the rule of damages given was correct. We are inclined to think the cases are distinguishable in their facts. In the Kohne Case it seems that the leased premises, or a part thereof, were rendered wholly unfit for the use intended by the breach of the covenant to repair, and the lessee thereby deprived of their use. In the present suit such was not the case; but, on the contrary, appellee made use of the leased premises, conducting his business therein, as before stated, to the full capacity of the building. If, however, the cases do not materially differ in their facts, then we are unwilling to follow the Kohne-White Case. No authority is cited in support of the opinion of the court, in regard to the measure of damages, as expressed in that case, and it is believed no such authority can be found.

We have given the assignments not discussed careful consideration, and, because we are of opinion none of them disclose reversible error, they are overruled.

The judgment of the lower court will be reformed, eliminating the amount of $1,500, recovered by appellee as the difference in the rental value of the demised premises with the repairs and the rental value without them, and as reformed will be affirmed as to the amount of $1,750, recovered as damage sustained on account of the injury to appellee's personal property.

Reformed and affirmed.

TALBOT, J. I cannot concur in the conclusion reached by the majority of the court that the court's charge, made the basis of appellant's second assignment, is not erroneous. The effect of this charge is, in my opinion, as contended by counsel for appellant, and the proposition of law embodied in the contention is elementary. As argued by counsel for appellant, if Mrs. Sanger broke her covenant to repair the roof of the stable, it was, notwithstanding, the appellee's duty to use ordinary care in the protection of his property and to thereby prevent as much damage as could be prevented by the use of such care. This duty rested upon appellee continuously from the time of the breach of the covenant to repair, until the leaks of the roof were stopped by the new roof placed upon the building. The court, by the charge in question, in effect told the jury that this duty did not arise until such a time as appellee ought reasonably to have concluded that appellant did not intend to repair the roof as she had agreed to do. Thus, according to the instructions of the court, the appellee, during the time elapsing before this period was reached, was under no obligation to use any care whatever to protect his property and mitigate or lessen the damages consequent upon the failure of appellant to repair. The roof began to leak, according to the undisputed testimony, in a few days after the lease was executed, and, according to the testimony offered by appellee, kept up continuously until some time in December, 1907, when the new roof was completed. During this time the appellee kept his buggies, wagons, phaetons, and other vehicles, and harness, blankets, feed, etc., in the building, and states, in substance, that during that period of time he was continuously being damaged as a result of the appellant's failure to repair the roof. He further stated that promises were made to repair the roof, and that he believed it would be repaired, but that none of these promises were kept, and the roof continued to leak until the new roof was put on the building.

Now, under the court's charge, the time when appellee should have concluded that appellant did not intend to repair the roof, in accordance with her covenant, had to be determined by the jury under the facts. Until that time was reached, according to the

135 S.W.—13

court's charge, there was no duty on appellee's part to repair the roof himself or exercise any care to mitigate the damages he was sustaining. In view of appellee's testimony to the effect that appellant, through her agent, continually promised during the time his property was being damaged that the roof would be repaired, and that he thought it would be done, the jury might have been authorized to say that up to the time of the completion of the new roof he had a right to reasonably expect the repairs; hence, under the charge, appellee was at no time under any obligation to exercise ordinary care to protect his property, so far as it could be done by such care and thereby lessen the damage he sustained. That portion of the paragraph of the court's charge immediately following the clause complained of does not, in my judgment, cure the error of the latter clause. The phrase, "under similar circumstances," used in that portion of the charge succeeding the charge, assigned as error, has reference to the circumstances referred to and embraced in the charge attacked, and said succeeding portion of the paragraph instructed the jury, in effect, that if, under such circumstances—that is, at such time as appellee, Smith, ought to have concluded that Mrs. Sanger did not intend to repair the roof of the stable—a reasonably prudent person would have repaired the roof himself, or would thereafter have made greater efforts to protect his property from injury than did Smith, then Mrs. Sanger would not be liable for such damage as would have been thereby avoided. Both sections of the paragraph therefore relieved appellee, for a portion of the time at least, during which his property was being injured, of the duty imposed upon him by law to use reasonable care to protect his property and thereby lessen the damage he was sustaining, so far as the same could be done by such care, and, construed singly or together, constituted affirmative error.

Nor can I concur in the conclusion reached by the majority of the court that there was no error in the trial court's action in refusing appellant's special charge, made the basis of her third assignment of error, because the same was sufficiently covered by the fifth paragraph of the general charge. For the reasons above stated, I think this paragraph of the court's charge was erroneous; but, if it should be conceded that it was correct, still it was not, in my opinion, the equivalent of the special charge here under consideration, and, having been requested, appellant was entitled to have the special charge given in the form presented, and thereby invoke the judgment of the jury upon the evidence relative to the issue embraced in it. Nowhere in the court's charge was the jury distinctly told that, if Mrs. Sanger breached her covenant to repair, it was appellee's duty to ex-

ercise due diligence, or ordinary care, to protect his property, and that for any injury that he could have avoided by the use of such diligence or care he could not recover.

I think the judgment of the court below should be reversed, and the cause remanded for a new trial.