## TONY v. McCLELLAND.  (No. 3192.)*

(Court of Civil Appeals of Texas. Texarkana. March 25, 1926. Rehearing Denied April 8, 1926.)

1. **Landlord and tenant** ⬅285(4)—**Evidence held to authorize submission of issue whether operation of lunch counter, in violation of lease, was merely incidental to confectionery store.**

Evidence *held* to show that operation of lunch counter in confectionery store, in violation of lease, was not so insignificant as to warrant submission of issue whether lunch counter was merely incidental and not a breach of lease.

2. **Landlord and tenant** ⬅134(2).

Cooking and serving food in store is not authorized by lease limiting use of premises to buying and selling merchandise.

3. **Landlord and tenant** ⬅112(2)—**Collection of rent after expenditures in fitting premises for restaurant, in violation of lease, held not to estop landlord to deny waiver of forfeiture.**

Mere collection of usual rent after expenditure on premises by lessee for use as restaurant, in violation of lease, not induced by any conduct of landlord, does not estop landlord to deny waiver of right of forfeiture.

4. **Contracts** ⬅316(1)—**Waiver of known contract right will not be implied contrary to intention of party, except to prevent fraud.**

Waiver of known contract right will not be implied contrary to intention of party, except when required to prevent imposition of fraud or inequitable consequences to adverse party.

5. **Appeal and error** ⬅1050(2)—**In absence of contention that use of premises as restaurant would not violate lease, admission of testimony concerning oral agreement not to so use premises was not reversible error.**

In suit to cancel lease, admission of testimony as to conversation in which tenants agreed not to use premises as restaurant is not reversible error as varying terms of written lease, where it was not contended that lease did not impliedly exclude such use.

6. **Appeal and error** ⬅1062(5)—**Submission of special issues as to landlord's intention to waive conditions of lease, or his misrepresentations, answered in negative held not error, though immaterial in suit to cancel lease.**

In suit to cancel lease for violation of its terms, submission of special issues as to landlord's intention to waive conditions of lease, or his misrepresentations on which tenant relied, answered in negative by jury, *held* not reversible error, though immaterial.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by W. H. McClelland, trustee of the estate of Hattie E. Gardner, against Elias Tony. Judgment for plaintiff, and defendant appeals. Affirmed.

Hall, Brown & Hall and Scott & Casey, all of Marshall, for appellant.

Davidson, Blalock & Blalock, of Marshall, for appellee.

HODGES, J. In January, 1925, the appellee, as trustee of the estate of Hattie E. Gardner rented a store building situated in the city of Marshall to the appellant and one G. T. Thomas. The terms of the lease were for one year, beginning February 1, with an option to the lessees to renew the lease for one additional year. The consideration for the lease was $900 per annum, payable monthly in advance, beginning on the following February. The contract was in writing, and contained, among other things, the following provisions:

"Sec. 5. Lessees contract and agree to comply with all laws, ordinances and regulations, national, state and municipal, with reference to the occupancy and use of the building, and to pay all expenses thereof, and especially shall they be required to, at their expense, comply with all sanitary and health rules and, regulations of every kind and character and pay all water, gas, electric, sewerage and other bills, and shall use said building only for the purpose of running and operating a store for the purchase and sale of goods, wares and merchandise. And it shall not be used as a shoe store

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

· *Writ of error dismissed for want of jurisdiction June 9, 1926.

or dry goods store except by permission of lessor."

"Sec. 9. In case of default in any of the covenants * * * terms or conditions of this lease the lessor may enforce the performance thereof in any of the modes provided by law, and in addition thereto may, ·in the event of such default, declare the lease canceled and of no further force and effect, and he or his agent or attorney shall have the right, without further notice or demand, to re-enter said premises. * * * The failure of the lessor to at any time exercise any option hereunder, or any right to declare this lease canceled and terminated as herein provided, shall not constitute a waiver of such right."

Shortly after the execution of this lease Thomas sold out his interest to the appellant, Tony, and the latter assumed all of the debts and obligations imposed by the lease contract. In May, 1925, the appellee notified Tony in writing that he had elected to cancel the lease on the ground that Tony had failed to comply with the conditions of the lease and was conducting a restaurant therein in violation of its provisions. Upon the refusal of the appellant to vacate the building in compliance with that demand, this suit was filed to cancel the lease and recover possession. As a ground for claiming a forfeiture against the appellant, the appellee pleaded the facts above stated, relying mainly upon the fact that appellant was running a restaurant.

In addition to a denial, the appellant pleaded specially a waiver of the forfeiture for breach of the conditions of the contract. The waiver, it was stated, consisted of the acceptance of the monthly rents with full knowledge of the character of the business being conducted in the building, and after the appellant had expended a large sum of money in equipping the building for use as a restaurant. It was also alleged that the main use made of the building was in buying and selling merchandise such as cigars, cigarettes, confectionery, fruits, and cold drinks, and that the serving of lunches was only incidental and not sufficient to constitute a diversion of the building to a use forbidden by the contract.

In response to special issues the jury found: (1) That during the months of March, April, and May the appellant was conducting a restaurant in the building, and the appellee accepted payment of the rents during those months with full knowledge of the character of the business being conducted; (2) that the appellee gave the appellant notice to vacate on April 7, and again on May 1; (3) that on April 4 Thomas sold out his interest in the business to the appellant, upon payment of a consideration of $525; that the appellee drew the contract between the parties, but he did not know of the payment of that consideration; (4) that the appellee had not made a misrepresentation of any fact upon which the appellant relied in paying Thomas a consideration for his interest; (5) that it was not the intention of the appellee in accepting the monthly rental, or by any other act or conduct of his, to waive the conditions and provisions of his lease. Upon those findings the court entered a judgment in favor of the appellee.

It is not contended in this appeal that using the leased building principally for the operation of a restaurant would not be a violation of the terms of the lease, and authorize the forfeiture claimed by the landlord. One of the defenses urged against a forfeiture is that the business of preparing and serving lunches was only incidental to the main business which might be legitimately conducted in the building. An assignment is based upon the refusal of the court to submit the following issue to the jury:

"Was the lunch counter as operated by the defendant the main business operated by him in said building, or merely incidental to such confectionery store?"

[1, 2] The evidence shows that in addition to selling fruits, cigars, cigarettes, and confectioneries, the appellant had installed a stove on which he prepared hamburgers, chili, and soups, which were served to customers in the building on a counter, or table, constructed for that purpose. A fair inference from the testimony of the appellant is that this trade formed a considerable part of his business, and he had expended a large sum of money in equipping the building for that use. The terms of the contract were that the building was to be used "only" as a place for purchase and sale of goods, wares, and merchandise. That means exclusively for the purposes expressed. Cooking and serving food upon the premises does not come within the meaning of buying and selling goods, wares, and merchandise. It is usually a distinct business, and certainly is not necessarily incidental to a mercantile enterprise. The evidence would not justify a finding that the restaurant feature of the appellant's business was so insignificant that it might be ignored if in its nature it was offensive to the contract. There was no occasion to have the jury pass upon an issue which could be decided but one way.

[3] Appellant also insists that if there had been such a breach of the contract as to authorize a forfeiture of the lease, the forfeiture had been waived as a matter of law. One of the grounds upon which he relied to show a waiver, regardless of the intentions of the landlord, is that appellant had expended a large sum of money in equipping the building for use in preparing and serving lunches, and that the appellee accepted the payments of rents with full knowledge of such expenditures. Whether or not the appellee had such knowledge was an issue which the appellant sought to have submitted to the jury. The refusal of the court to submit that issue is the basis of another assignment. According to

the testimony of the appellant the first installment of rent was paid about the 1st of February. Within a week or two after getting possession of the building he began the improvements in which the expenditures were made. It was not claimed that these were made with the consent of the landlord. It conclusively appears that they were completed before the next installment of rent became due. It follows that the appellant was not induced to make the expenditures by anything done by the appellee. The mere collection of the usual rental after the expenditures were made would not constitute an estoppel to deny a waiver of the right of forfeiture.

[4] The waiver of a known contract right will not be implied contrary to the intention of a party, except when required to prevent the imposition of a fraud, or inequitable consequences to the adverse party. Those conditions do not exist in this instance. In 35 Corpus Juris, p. 1080, the author says:

"The acceptance by a landlord of rent which accrues after the breach of a condition contained in the lease is a waiver of the right to declare a forfeiture of the lease and re-enter because of such breach, whatever may be the ground of forfeiture, and although the lease may require a waiver to be in writing, but the acceptance must have been with full knowledge upon the part of the landlord of the fact of the breach and all of the circumstances thereof."

On page 1082 he makes this qualification:

"The receipt of rent is not a waiver of a continuing breach of covenant, such as the breach of a covenant as to the use of the premises, a covenant to insure the premises, or a covenant to repair."

[5] Over the objection of the appellant three witnesses were permitted to testify concerning a conversation between the appellee and the appellant and his partner Thomas at the time the lease contract was made. That testimony was, in substance, that the appellant and his partner were then informed by the appellee that he would not lease the building for use as a restaurant, and that they stated that they did not intend to use it for that purpose; that they expected to use it as a place for selling fruits, confectioneries, cigars and cigarettes. The objection urged is that such testimony tended to vary the terms of the writing. As previously stated, there is no contention in this appeal that the written terms of the lease do not by implication exclude the use of the building as a restaurant. If that be true, there was no practical difference between the testimony admitted and the written contract. However immaterial that testimony may have been, it furnishes no just ground for a reversal of the judgment.

[6] In the only two remaining assignments which need be considered complaint is made of the submission of the two special issues:

"Was it the intention of the plaintiff, W. H. McClelland, in accepting rental money from Elias Tony, or by any other acts or conduct of his, to waive the conditions and provisions of his lease?

"Did W. H. McClelland make any misrepresentations of some facts to Elias Tony upon which Elias Tony relied and acted in paying a valuable consideration to the said George Thomas for his interest in the business?"

However inappropriate or immaterial those issues may have been, under the facts of this case, their submission and the answers returned do not constitute a ground for a reversal. They could do no affirmative injury to the appellant, and, if immaterial, they might have been disregarded by the trial court in the rendition of his judgment.

The judgment is affirmed.