# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2025

Lyle W. Cayce
Clerk

———————

No. 24-50113

———————

SHANE VINALES, *Individually and as Next of Friend of* L.V. and S.V.;
BECKY VINALES, *Individually and as Next of Friend of* L.V. and S.V.,

*Plaintiffs—Appellants/Cross-Appellees*,

*versus*

AETC II PRIVATIZED HOUSING, L.L.C.,

*Defendant—Appellee/Cross-Appellant*,

AETC II PROPERTY MANAGERS, L.L.C.; HUNT ELP, LIMITED,
*doing business as* HUNT MILITARY COMMUNITIES,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-1280

———————————————————————

Before ELROD, *Chief Judge*, and KING and GRAVES, *Circuit Judges*.

PER CURIAM:[*]

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-50113

The Vinales family Appellants sued Appellees, a collection of private military housing providers, on claims related to their leased home's condition and resulting personal property damages. On summary judgment, the magistrate judge held that most of Appellants' claims were barred by the federal enclave doctrine and dismissed their fraud claim for failure to raise a genuine dispute of material fact.[1] After trial on the remaining claim, a jury awarded Appellants over $90,000 in damages, but the magistrate judge rejected Appellants' motion for attorneys' fees. Appellants appeal the application of the federal enclave doctrine, the dismissal of the fraud claim, the exclusion of evidence at trial, and the denial of attorneys' fees. One Appellee cross-appeals, challenging the jury awards on multiple grounds. We AFFIRM.

## I. Background

In 1951, Texas ceded exclusive jurisdiction over land that would become Randolph Air Force Base ("Randolph") to the United States. In 2007, the United States Air Force entered a lease with AETC II Privatized Housing, LLC ("AETC Housing") to operate and maintain housing at Randolph. The lease requires AETC Housing to "comply with all Applicable Laws," and to design and construct buildings to a standard "to meet the Bexar County, Texas building codes," but also notes that "[n]othing in this Lease shall be construed to constitute a waiver of Federal Supremacy," and that "the United States presently exercised exclusive federal jurisdiction over the Leased Premises."[2] AETC Housing manages military housing at

---

[1] The parties consented to the magistrate judge conducting proceedings and entering final judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[2] A Master Development and Management Agreement ("MDMA") between the Air Force and Appellees further governs the relationship. In its definitions and interpretation section, the MDMA defines "applicable law" as referring to "all federal,

2

No. 24-50113

Randolph in conjunction with its authorized agent, AETC II Property Managers, LLC ("AETC Managers"), and Hunt ELP, Limited ("Hunt") (collectively, "Appellees").

Lt. Col. Shane Vinales, his wife Becky Vinales, and their two children (collectively, "Appellants") leased and moved into housing owned and operated by Appellees at Randolph in October 2017. Prior to moving in, Appellants walked through the house with a Hunt representative and asked about a "musty" smell. The representative responded that "these homes are old, and this is what grandma's house smells like," and that the smell was "normal." After the walkthrough, Appellants signed a 12-month lease which then automatically renewed on a month-to-month basis. The lease required AETC Housing to "make a diligent effort to repair or remedy the condition at the Premises." The lease also incorporated AETC Housing's Resident Guidelines. Under the Resident Guidelines, AETC Housing was responsible for the "maintenance and operation" of the housing, agreed to maintain various facilities "in good and safe working condition," and agreed "to comply with all applicable building and housing code requirements governing residential property in the State of Texas." Appellants lived in the home until May 22, 2019.

On a website, Appellees allegedly advertised their properties as "quality housing" and represented themselves as "one of the best" providers of military housing in the country. But Appellants alleged that "the house smelled musty, was dirty, and was littered with insects," and that Appellees addressed asbestos problems so poorly that Appellants suffered significant health issues. Appellants further alleged Appellees did nothing to

———————————

state and local laws . . . which are applicable to the Project Owner or the Project during the Agreement Term."

address ongoing mold until after Appellants received orders transferring them to Hawaii, but even then, the efforts were so haphazard that the military transporters refused to move Appellants' personal property due to contamination concerns.

In October 2019, Appellants and seven other military families who had lived in AETC Housing properties sued Appellees in the United States District Court for the Western District of Texas. Appellants stated eleven causes of action including breach of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), breach of contract, common-law fraud, and a variety of other claims. Appellants also sought attorneys' fees and exemplary damages under various Texas Codes. The magistrate judge granted two motions for summary judgment against Appellants, dismissing most of their claims and forms of relief. The magistrate judge reasoned that because the federal enclave doctrine applied, Appellants' claims were governed by federal law and non-conflicting pre-cession state law, and most of their causes of actions or forms of relief were not recognized at the time Texas ceded the land. The magistrate judge also granted summary judgment against Appellants on their common-law fraud claim, finding no genuine dispute of material fact.[3]

The breach of contract claim proceeded to a jury trial. At trial, the magistrate judge excluded several pieces of Appellants' evidence. Appellees filed a motion for judgment as a matter of law, which the magistrate judge denied. During closing statements, Appellants requested $40,654.10, the total rent paid, for diminution in the value of the lease, and a minimum of $56,157.48 for damage to their personal property, while arguing the total

---

[3] The magistrate judge also ordered that each of the families' cases be tried separately.

damage to personal property "was as much as $10,000 greater than this amount." The jury found that Appellees failed to make a diligent effort to repair or remedy conditions at the house under the terms of the Lease Agreement, and failed to maintain appliances, facilities, and common areas in good and safe working condition under the terms of the Resident Guidelines and Lease Agreement, and awarded Appellants $31,654 for diminution in value of the lease and $60,000 for damages to personal property.

After trial, Appellants filed a motion for attorneys' fees, seeking $2,888,035.08 for services rendered and costs, plus an additional 300% fee enhancement, under the operative pre-cession state law. The magistrate judge denied all fees. Appellees also renewed their motion for judgment as a matter of law or for a new trial. The magistrate judge largely rejected that motion but agreed that the claims against AETC Managers had to be dismissed.[4] Appellants timely appealed, Appellees responded, and one Appellee—AETC Housing—cross-appealed.

## II. Federal Enclave Doctrine

At summary judgment, the magistrate judge dismissed most of Appellants' claims as barred by the federal enclave doctrine. We review that legal conclusion de novo. *Pinkston v. Kuiper*, 67 F.4th 237, 240 (5th Cir. 2023). "Generally, when an area in a State becomes a federal enclave, 'only the [state] law in effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611–12 (2019) (alteration in original) (quoting *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940)). "Existing state law typically does

---

[4] The magistrate judge held that AETC Managers was not a party to the lease and could not be held liable as a disclosed agent.

not continue in force, however, to the extent it conflicts with 'federal policy.'" *Id.* at 612 (quoting *Paul v. United States*, 371 U.S. 245, 269 (1963)). "And going forward, state law presumptively does not apply to the enclave." *Id.* Appellants make multiple arguments why the federal enclave doctrine does not bar their claims.

Appellants first argue that "[t]here is an increasing realization that federal laws on enclaves are simply inadequate for a full and fair adjudication of disputes that are commonplace in modern life," and therefore "contemporary state laws are valid within federal enclaves unless they interfere with the jurisdiction asserted by the federal government." Appellants rely heavily on *Howard v. Commissioners of the Sinking Fund of the City of Louisville,* 344 U.S. 624 (1953). But this circuit has squarely rejected reading *Howard* to mean that post-cession state law is valid if it does not conflict with federal objectives. *Miss. River Fuel Corp. v. Cocreham*, 382 F.2d 929, 937 n.17 (5th Cir. 1967) ("*Howard* did not . . . imply that a state has legislative power within a federal enclave unless exercise of that power interferes with the federal government."). If federal law has become inadequate or out of step with contemporary state law, "[c]ongressional action is necessary to keep it current." *Sadrakula*, 309 U.S. at 100.

Appellants next argue that an exception to the federal enclave doctrine applies to their DTPA claim. 28 U.S.C. § 5001(b), titled "Personal injury," provides that "[i]n a civil action brought to recover on account of an injury sustained" within a federal enclave, "the rights of the parties shall be governed by the law of the State in which the place is located." The magistrate judge held § 5001(b) inapplicable, suggesting it likely applies only to physical injuries, but finding at the very least that it does not apply to claims brought under the DTPA. Indeed "Texas appellate courts have repeatedly admonished that the DTPA does not provide relief for personal injury claims." *Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309 RP, 2015 WL

No. 24-50113

7454688, at *5 (W.D. Tex. Nov. 23, 2015); *see, e.g.*, *Last v. Quail Valley Country Club, L.P.*, No. 01-08-00759-CV, 2010 WL 1253782, at *7 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) ("The Legislature has expressed its intent that the DTPA does not provide a cause of action for personal injury claims."). Because the DTPA does not allow for personal injury claims, Appellants' DTPA claim cannot fit under § 5001(b)'s personal injury exception.

Appellants next argue that references to Texas law in the lease, Resident Guidelines, and MDMA demonstrate that the parties intended to incorporate Texas law into the lease. We need not decide whether a choice-of-law provision could even abrogate the federal enclave doctrine because the various excerpts Appellants cite merely reference "the local applicable laws," state laws, or housing codes.[5] References to "applicable law" do not evince an intent to apply any specific law. *Cf. Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 230 (2d Cir. 2012) (explaining reference to applicable laws "simply raises the question of what laws were applicable").[6] And Appellants offer no authority to suggest a choice-of-law provision can be implied from these other relatively oblique references. Therefore, federal and pre-cession state law govern. *Accord JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, No. 3:15CV235, 2017 WL 4003026, at *1 (E.D. Va. Sept. 11,

---

[5] For example, a provision of the lease notes that the parties' rights are "in accordance with the provisions of applicable law," while a provision of the rental agreement notes that "[t]he Lease and Resident Guidelines are intended to comply with and shall be construed in accordance with all applicable state, federal and local laws."

[6] Appellants' reference to the principle that "the current iteration of the law, *as it stands when parties make a contract*, must be deemed incorporated into the contract even if not done so expressly," also misses the mark. While that principle is correct, it does nothing to address the fact that the current iteration of the law within this federal enclave as it stood when these parties entered this contract was Texas's pre-cession law to the extent it had not been modified by later congressional action.

7

2017) ("Thus, if no enforceable choice-of-law provision governs the parties' subcontracts, federalized state law would likely govern these claims.").

In summary, the magistrate judge correctly held that the federal enclave doctrine applied, that no exception was valid, and therefore that federal law and pre-cession state law governed Appellants' claims. Because many of Appellants' claims do not exist under federal or pre-cession state law, the magistrate judge correctly granted summary judgment in favor of Appellees on those claims.

### III. Fraud Claims

The magistrate judge also granted summary judgment on Appellants' common-law fraud claim, holding that Appellants failed to identify any actionable fraudulent statements. "A common-law fraud claim requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)); *see also Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n App. 1932, holding approved, judgm't adopted) (same under pre-cession law). On appeal, Appellants point to five sources of allegedly material misrepresentations.[7] We review each de novo, viewing all facts and inferences in favor of Appellants, while rejecting conclusory allegations,

---

[7] Appellants also argue the magistrate judge violated the law of the case doctrine by referencing the Rule 9(b) standard while discussing the summary judgment motion. But that doctrine is inapplicable here. *See United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997). Regardless, the magistrate judge still conducted the proper summary judgment analysis, analyzing each of the alleged misstatements.

speculation, or unsubstantiated assertions. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010).

First, as to alleged misrepresentations in the lease and Resident Guidelines—Appellees' guarantees to sufficiently maintain the home—Appellees' later breach of their duties under the lease does not demonstrate that they had no intention of honoring them at the time. *See Wells v. Burroughs*, 65 S.W.2d 396, 397 (Tex. App.—Texarkana 1933, no writ).[8] Second, as to alleged misrepresentations on Hunt's websites—boasting about housing quality—the magistrate judge was correct that such statements were non-actionable puffery. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (holding statements that "building was 'superb', 'super fine', and 'one of the finest little properties in'" the city were non-actionable puffery); *see also Tex. Co-operative Inv. Co. v. Clark*, 216 S.W. 220, 221 (Tex. App.—Fort Worth 1919) (applying pre-cession law distinguishing between "puffing" and false representations), modified 239 S.W. 198 (Tex. Comm'n App. 1922). Third, as to pre-lease walkthrough statements—essentially that the smell in the house was normal—the magistrate judge was correct that Appellants failed to identify why these constituted anything beyond non-actionable statements of opinion. *Accord Wilson*, 45 S.W.2d at 574 ("[A] representation which is expressed and understood as nothing more than a statement of opinion

---

[8] Appellants cite the post-cession case *Schindler v. Austwell Farmers Co-op.*, 841 S.W.2d 853 (Tex. 1992) (per curiam), but there the court held that "[f]or a promise of future performance to be the basis of actionable fraud, it must have been false at the time it was made." *Id.* at 854. As that court noted, although a failure to perform is "a circumstance to be considered with other facts to establish intent," that failure, "standing alone, is no evidence of the promisor's intent not to perform when the promise was made." *Id.* (citation omitted).

cannot constitute fraud and form a basis for recovery.").[9] Fourth, the move-in day statement—described variously as representing that there were "no problems" with the house or that a Hunt representative had "no recollection of prior work orders"[10]—fails both because it is paraphrased and unspecific, *see Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), and because a statement that there were "no problems" is a non-actionable statement of opinion, considering there was no evidence that there was a live problem known to Hunt at the time of move-in, *see Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (citing pre-cession law indicating that for opinion statements to be actionable, they typically must be based on or accompanied by false facts). Finally, as to the allegedly fraudulent repair scheme—whereby Appellees failed to input work orders and performed deceptive repairs—Appellees are correct that because Appellants never saw these alleged misstatements, they could not serve as the basis for fraud. *See Coffield v. Cox*, 162 S.W.2d 741, 743 (Tex. App.—Amarillo 1942, writ ref'd n.r.e.) ("The law is settled that to constitute actionable fraud the representations *relied on* must be material and must be false at the time they were made." (emphasis added)). Appellants' attempts to identify a material misrepresentation are unavailing.[11]

---

[9] *See also Clark v. City of Alexandria*, 116 F.4th 472, 478 (5th Cir. 2024) ("To make a showing of a genuine dispute of material fact, 'the party opposing summary judgment is required to identify specific evidence in the record and *to articulate the precise manner in which that evidence supports his or her claim.*'" (quoting *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016) (emphasis added))).

[10] Becky testified to the "no problems" comment, whereas Shane testified to the "no recollection of prior work orders" comment. As both state that this comment(s) was made on move-in day when they inquired with Hunt, it seems this is actually the same alleged misrepresentation.

[11] Appellants also hint at a fraud by omission theory but have forfeited that argument by failing to substantively brief it both here and below. *See Yohey v. Collins*, 985

No. 24-50113

## IV. Attorneys' Fees

The magistrate judge denied Appellants' repeated motions for attorneys' fees, explaining in a post-trial order that Appellants had failed to confer, lacked any legal basis for fees, and requested excessive hours and rates.[12] "[T]his court reviews a denial of attorney's fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 713 (5th Cir. 2020). Appellants argue they properly conferred but merely omitted certification from their original motion and had a legal basis for fees under the pre-cession law, Article 2226 of the Texas Revised Civil Statutes. Appellants have likely waived their Article 2226 argument by failing to certify under the local rules. *See Zimmerman v. City of Austin*, 969 F.3d 564, 570 (5th Cir. 2020). Regardless, Article 2226 only allows for recovery of attorneys' fees against a "person" or "corporation." Tex. Rev. Civ. Stat. art. 2226 (1949). But Appellees are all limited liability companies, barring recovery. There was no abuse of discretion.

## V. Exclusion of Evidence

Appellants challenge the exclusion at trial of three categories of evidence: conditions of other homes; the pre-lease condition of their home; and the post-lease condition of their home. "The trial judge's assessment of relative probative value of evidence and unfair prejudice is generally accorded great deference because of his or her first-hand exposure to evidence and familiarity with the course of the trial proceedings." *Int'l Ins.*

---

F.2d 222, 224-25 (5th Cir. 1993); *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 649 (5th Cir. 2025).

[12] The magistrate judge also initially held that Appellants' motion was untimely, but later noted he had likely miscalculated the deadline.

11

No. 24-50113

*Co. v. RSR Corp.*, 426 F.3d 281, 300 (5th Cir. 2005). Therefore, we review for abuse of discretion and will only reverse upon a showing of substantial prejudice. *Huynh v. Walmart Inc.*, 30 F.4th 448, 458 (5th Cir. 2022).

The magistrate judge did not abuse its discretion in excluding evidence of other servicemembers' homes because, although Appellants argued the evidence was indicative of Appellees' habit, they did not meet the bar for admission of such evidence under Federal Rule of Evidence 406. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Constr. Servs., Inc.*, 45 F.3d 96, 100 (5th Cir. 1995) (holding that to qualify as habit evidence admissible as a routine business practice, "the plaintiff must show regularity over substantially all occasions or with substantially all other parties with whom the defendant has had similar business transactions"); *accord Federico v. Lincoln Mil. Hous. LLC*, No. 2:12-CV-596, 2015 WL 12806532, at *4 (E.D. Va. Nov. 13, 2015). Nor did the magistrate judge abuse its discretion in excluding evidence of the pre-lease condition of Appellants' home because Appellants articulated no theory on how the exclusion prejudiced them; the only case cited by Appellants found similar evidence "irrelevant." *Federico*, 2015 WL 12806532, at *2. Lastly, the magistrate judge did not abuse its discretion in excluding evidence of post-lease conditions, because "the general rule [is] that evidence of subsequent corrective measures is not admissible." *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 395 (5th Cir. 1972).[13]

---

[13] Appellants' argument that they would merely use this for impeachment is undermined by their argument it "would have assisted the jury in accurately understanding the true condition of the home during the Appellants' tenancy." This argument exposes the danger that the evidence presented a danger of unfair prejudice that substantially outweighed its probative value. Fed. R. Evid. 403.

## VI. Diminution of Rental Value Damages

On cross-appeal, AETC Housing asserts multiple reasons why the diminution of rental value damages must be reversed. AETC Housing first argues that pre-cession law barred diminution of rental value claims. But the very case it cites for this proposition recognized such a claim. *See Mitchell v. Weiss*, 26 S.W.2d 699, 701 (Tex. App.—El Paso 1930, no writ). Next AETC Housing argues that Appellants' exclusive remedy under the lease was to surrender possession. But an exclusive remedy provision must be explicit and clear. *See, e.g.*, *Stark v. George*, 252 S.W. 1053, 1056 (Tex. Comm'n App. 1923, judgm't adopted); *see also Nunn v. Brillhart*, 242 S.W. 459, 461 (Tex. Comm'n App. 1922, judgm't adopted). Here, there was no such clear intent to mandate surrender as an exclusive remedy.

Finally, AETC Housing argues that after the initial lease expired and went month-to-month, Appellants' continued renewal of the lease despite knowledge of the conditions waived a right to any recovery for that period. AETC Housing cites *Tony v. McClelland*, 283 S.W. 679 (Tex. App.—Texarkana 1926, writ dism'd w.o.j.). In *Tony*, the court held that a commercial landlord could not cancel a lease based on the lessee's violation of a term of the lease when the landlord had continually accepted rent despite earlier knowledge of that violation. *Id.* at 681. But as the *Tony* court noted, "[t]he waiver of a known contract right will not be implied contrary to the intention of a party, except when required to prevent the imposition of a fraud, or inequitable consequences to the adverse party." *Id.* AETC Housing points to no basis to imply waiver of a known contract right under *Tony*. *Cf. id.* ("[T]he receipt of rent is not a waiver of a continuing breach of covenant, such as . . . a covenant to repair." (quoting 35 CORPUS JURIS 1082 (1924)). The magistrate judge did not err in finding this claim was not barred by pre-cession law, an exclusive remedy clause, or waiver.

No. 24-50113

## VII. Sufficiency of Evidence

At trial, the jury awarded Appellants $60,000 in personal property damages and $31,654 for diminution in value of the lease. AETC Housing challenges the denial of its motion for judgment as a matter of law, arguing these awards lack evidentiary support both in terms of causation and valuation. The law governing what damages are recoverable is substantive, and therefore pre-cession state law "governs what damages are available for a given claim and the manner in which those damages must be proved," while the "sufficiency of the evidence supporting a damages award . . . is a matter of federal procedure."[14] *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398 (5th Cir. 2013); *accord Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 2838359, at *3 (W.D. Tex. July 16, 2010).

"We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). "A motion for judgment as a matter of law in a case tried by a jury, however, 'is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'" *Id.* (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)). "Although our review is de novo, we recognize that our standard of review with respect to a jury verdict is especially deferential." *Id.* at 273 (quoting *Flowers v. S. Reg'l*

---

[14] Stated differently, the distinction is that we "apply federal standards of review to assess 'the sufficiency or insufficiency of the evidence in relation to the verdict,' but in doing so we refer to state law for 'the kind of evidence that must be produced to support a verdict.'" *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (quoting *Ayres v. Sears, Roebuck & Co.,* 789 F.2d 1173, 1175 (5th Cir.1986)). So, whether damages require direct proof or allow circumstantial evidence, or require expert testimony or allow anecdotal evidence, is determined here by pre-cession state law. *See id.* But the standard of review, discussed *infra*, is federal. *Id.*

No. 24-50113

*Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). And "we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party," and therefore will reverse "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable jury could return a contrary verdict." *Id.* (quoting *Foradori*, 523 F.3d at 485 & n.8).

As to personal property damages, AETC Housing first argues that Appellants cannot prove causation because they disposed of property even though it was "cleared for shipment and found without contamination." Under pre-cession law, contract damages are recoverable if they "arise naturally from the breach itself," or could be reasonably contemplated to flow from a breach. *Humble Oil & Refin. Co. v. Wood*, 292 S.W. 200, 201 (Tex. Comm'n App. 1927, judgm't adopted). Here, it was reasonably foreseeable that disposal of property would flow from a breach of AETC Housing's duty to diligently repair. Further, it was not unreasonable for a jury to conclude that Appellants felt compelled to dispose of property, despite AETC Housing's assurances it was mold free, given the evidence of insufficient remediation efforts.[15]

AETC Housing next argues that Appellants failed to particularly value the damaged personal items and offered only their own conclusory testimony. **ECF 93, 84.** Appellants respond with several pieces of evidence that were before the jury.[16] Pre-cession state law on the manner in which a

---

[15] For example, Shane testified that even after moving they "saw mold on stuff," while Becky testified about compromised containment measures. Appellants further submitted evidence of complaints about the restoration company used, photos of fallen containment measures, and testimony on cross-contamination between "clean" rooms.

[16] For the personal property, Appellants offered an email they had previously sent to Appellees itemizing several dozen items and providing their replacement cost totaling

party must prove personal property damages is admittedly inconsistent on both the level of itemization needed, *compare Hou., E. & W.T. Ry. Co. v. Seale*, 67 S.W. 437, 438 (Tex. App.—Galveston 1902, no writ), *with Halsell v. Scurr*, 297 S.W. 524, 530 (Tex. App.—Fort Worth 1927, writ dism'd w.o.j.), and the evidentiary weight afforded to an owner's valuation, *compare Cluck v. Hou. & T.C.R. Co.*, 79 S.W. 80, 81 (Tex. App.—Austin 1904, no writ), *with Pecos & N.T. Ry. Co. v. Grundy*, 171 S.W. 318, 318–19 (Tex. App.—Amarillo 1914, no writ). And though AETC Housing's argument that Appellants should have testified about the cost, manner of use, and general condition of their items has some support*, see Black v. Nabarrette*, 281 S.W. 1087, 1088 (Tex. App.—Dallas 1926, writ dism'd w.o.j.), other authority suggests such testimony was unnecessary, *see Grundy*, 171 S.W. at 319.

As to the rental diminution, AETC Housing argues the jury heard no evidence about the amount, length, or extent of the diminution. But Appellants counter that that they offered a ledger documenting their lease payments, provided the jury examples of the problems with the home, and argue that they were well-positioned to comment on the conditions and resulting diminution. The precedent here is similarly unilluminating.[17] While

---

$9,157.48 + tax, as well as Becky's testimony at trial that the value of her damaged LuLaRoe inventory was $38,000-$39,000 and that of her family's personal clothes was $8,000.

[17] AETC Housing principally relies on *Sanger v. Smith*, 135 S.W. 189 (Tex. App.—Dallas 1911, writ ref'd). In *Sanger*, a jury had awarded damages for diminution in rental value where a lessor had failed to repair a leaking roof, *id.* at 190, but the appellate court reversed because the lessee had "used the leased building, notwithstanding the leaky roof . . . , to its full capacity, transacting therein the business he contemplated transacting when he leased it," *id.* at 193. But in *Sanger*, the lease was for a commercial building and the lessee received the benefit of the bargain by using the building "with practically the same profitable result as would have been realized had the covenant to repair been strictly kept." *Id.* In contrast, here even though Appellants continued to use the building, they submitted substantial evidence that they did not receive the same benefit of the bargain—a safe, well-maintained house.

No. 24-50113

AETC Housing is correct that Appellants did not show any sort of formula or calculations for diminution damages, they sought 100% of their rent paid and put on evidence showing why they believed they received none of the benefit of the bargain—and the jury largely agreed by awarding over 75% of the requested diminution damages.

We echo the magistrate judge in concluding that we are "not inclined to second-guess the jury's determination" despite our "misgivings about the damages evidence at trial." Given the high standard to overturn a jury's damages findings and the inconsistent pre-cession law on how those damages must be proved, AETC Housing has not demonstrated that "the evidence points so strongly and so overwhelmingly" in its favor that "no reasonable jury" could have found Appellants suffered these damages. *See Heck*, 775 F.3d at 273 (citation omitted).[18]

## VIII. Jury Instructions

AETC Housing argues that under pre-cession law, Appellants had to obtain findings that they satisfied all their contractual obligations to pursue their breach of contract claim, and that because they did not request and secure a jury charge requesting the same, they waived recovery. Because AETC Housing preserved its challenge to the jury instructions by objecting at trial, we review that challenge for an abuse of discretion. *In re 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021). Initially, a "'challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether' the instructions 'properly guided' the jury 'in its

---

[18] *See also City Hotel Co. v. Aumont Hotel Co.*, 107 S.W.2d 1094, 1095 (Tex. App.—San Antonio 1937, no writ) (upholding $700 damages award value based on single witness's testimony that the difference in market value with versus without repairs "was anywhere from $1,000 to $2,000").

deliberations.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019) (quoting *Pelt v. U.S. Bank Tr. Nat. Ass'n*, 359 F.3d 764, 767 (5th Cir. 2004)).

Under pre-cession law, "to recover for the breach of a written contract evidencing concurrent and mutual obligations, that plaintiff must aver compliance on his part," and provide evidence of that compliance. *Jessen v. Le Van*, 161 S.W.2d 585, 586 (Tex. App.—El Paso 1942, no writ). Here, the second jury question noted that AETC Housing's duty to maintain was "subject to the covenants and duties undertaken by Resident(s)," which suggests the jury found Appellants satisfied all relevant covenants and duties under the contract. Therefore, AETC Housing has not created "substantial and ineradicable doubt" that the questions failed to guide the jury. *Puga*, 922 F.3d at 291 (citation omitted). There was no abuse of discretion.

## IX. Conclusion

Because no party has shown reversible error, we AFFIRM the judgment of the magistrate judge.