CITY OF SAN ANTONIO V. BETTY M. EARNEST.

No. A-573. Decided July 11, 1945.
(188 S. W., 2d Series, 775.)

*T. D. Cobb, Jr.,* City Attorney, and *Hugh R. Robertson,* Assistant City Attorney, for the City of San Antonio, petitioner.

The Court of Civil Appeals erred in holding that the suit was one to set aside a judgment and nothing more. Slaughter v. Qualls, 139 Texas 340, 162 S. W. (2d) 671; McCampbell v. Drust, 40 S. W. 955; Carl v. Settegast, 237 S. W. 238.

*T. H. Ridgeway* and *S. D. Hopkins,* both of San Antonio, for respondent.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

The subject matter of this litigation is a small triangular tract of land in the city of San Antonio. The suit was originally brought by the city against Mrs. Betty M. Earnest, widow of Lee W. Earnest, but by an amended petition filed eight years later it was alleged that Mrs. Earnest had died and by her will had devised the property to Miss Betty Ridgeway, a minor, who appears in the litigation by and through her father and attorney ad litem, T. H. Ridgeway. In her answer to the amended petition the defendant, by way of special exceptions, pleaded the bar of the four years statute of limitation, Art. 5529, R. S. 1925, and also that the city's right of recovery was barred by its laches. These special exceptions were sustained and, upon the city's declining to amend, the case was dismissed. The trial court's judgment was affirmed by the Court of Civil Appeals 186 S. W. (2d) 740.

The petition to which the exceptions were sustained may be summarized as follows: It was alleged that Lee W. Earnest and his widow and heir, Betty M. Earnest, claimed title to the land in controversy under a judgment for taxes rendered in 1913, and that Betty Ridgeway is claiming title as a devisee of Mrs. Earnest. It was alleged that the tax judgment "and all proceed ings pursuant thereto were and are null and void and of no force and effect for the following reasons":

That the land is a part of a grant from the Crown of Spain, confirmed by the Congress of The Republic of Texas, to the City of San Antonio; that it is a part of a public street known in the days of Spanish Rule as a "Royal Highway," which has been used as a public thoroughfare continuously from the original settlement of San Antonio under Spanish dominion to the present time; that the tax suit was filed, the judgment therein obtained and the tax deed to Lee W. Earnest executed in furtherance of a fraudulent scheme devised by said Earnest, as follows:

That he, Earnest, would procure some person to execute and deliver to him a deed to the property; that after obtaining the fictitious deed he would have same recorded in the deed records and would then represent to the city tax assessor that he was the owner of the property and, by such false representations, would induce the assessor to accept a rendition of the same as belonging to him; that having gotten the property on the tax rolls in his name, he would permit the taxes to become delinquent and would then induce the attorney for the city to file suit for taxes against him, procure a judgment and sale, at which sale he would buy the property in and obtain a deed thereto from the sheriff; that in consummation of his fraudulent scheme he did the following things:

"(a) He obtained a printed deed form, filled it out and had it signed and acknowledged before a notary public in Houston, Texas, by a woman who signed the deed 'E. Morgan'; that the family name of Mrs. Betty Earnest, the wife of Lee W. Earnest, was Morgan, and the name Betty, being a common diminutive of Elizabeth, plaintiff asserts upon information and belief that 'E. Morgan', the signer of the fictitious deed, and Mrs. Betty Earnest were one and the same person. This fictitious deed bears date February 10, 1910.

"(b) Having fixed up said deed, the said Lee W. Earnest filed same for record with the County Clerk of Bexar County, Texas, February 14, 1910, and thereupon rendered the property to the City Assessor to be assessed for city taxes as his property, although he well knew it was not his property.

"(c) That the said Lee W. Earnest then let said property go unrendered for the years 1911, 1912 and 1913, and refrained from paying taxes thereon, and March 6, 1913, he filed with the Clerk of the District Court of Bexar County for the 37th Judicial District of Texas, the petition of the City of San Antonio against Lee W. Earnest and E. Morgan, being a suit for delinquent taxes for the year 1911 on said property, amounting to $2.88, said suit being No. B-5492 on the docket of said court; that the petition in said suit was on the form commonly used in suits for delinquent taxes, and it was written by Lee W. Earnest, but bore the names of * * *, City Attorney, and * * *, Assistant City Attorney, as signers; that said petition alleged that E. Morgan was claiming some interest in or lien upon said property.

"* * *

"(d) That immediately following the filing of said tax suit, and in continuing furtherance of said fraudulent scheme, the said Lee W. Earnest caused citations to be issued for himself and for E. Morgan, both of which citations were served in San Antonio on the same date, to-wit: March 8, 1913.

"(e) That afterwards, on May 6, 1913, said Earnest obtained and wrote on one of the blanks used by said City for its judgment in tax cases, a judgment in his own handwriting in which it was recited that said Morgan failed to appear and made default, but said Earnest answered in person, though neither of them filed any written answer, said judgments being only in favor of said City for the sum of $2.88 and foreclosure of tax lien on the property hereinbefore described.

"(f) That thereafter, to-wit: On June 9, 1913, * * *, the said Lee W. Earnest, in furtherance and in consummation of the fraudulent scheme aforesaid, procured to be issued by the Clerk of said Court an order of sale under said judgment and thereunder the said property above described was sold by the sheriff of Bexar County on July 1, 1913, when said Lee W. Earnest bought in the same for the sum of $19.50 and said sheriff thereafter executed deed therefor to him.

"14. That at no time since the filing of the petition in the above purported tax suit has said Lee W. Earnest or E. Morgan or any one else claiming adversely to the City ever had possession of said property or ever exercised any control thereover, but said City of San Antonio has always controlled and claimed the same as part of its ancient ejidoe and as part of its public

thoroughfare known as Laredo Street in said City, used generally by the public in going to and fro and by pedestrians and by vehicles of all sorts and kinds."

The petition exonerates the city attorney of any wrongdoing, alleging that he had no knowledge of the matter. With reference to these allegations of fraud the position of respondent is that, since all of the proceedings were regular upon their face, the judgment was only voidable, not void; that the suit was one to set aside a judgment and nothing more and, having been brought more than four years after the judgment was rendered, was barred by the four years statute of limitation. Art. 5529, R. S. 1925. We are unable to concur in these views.

■ Assuming that the allegations of the petition are true, as we must do in testing the sufficiency thereof by exceptions, it is our view that each and every step in the rendition, assessment, and levy of the taxes and in the suit for foreclosure of the alleged lien, including the judgment, was a nullity, and that the only title that could have passed to Earnest by the sheriff's deed was the title of the defendants in the tax suit, which was no title at all. These conclusions are supported by numerous authorities, some of which will be noticed below.

■ As a portion of a public thoroughfare the land in controversy was and is exempt from forced sale and taxation by Art. 11, Sec. 9, of our State Constitution. The general rule applicable to such land is stated in 61 C. J., Taxation, Sec. 1435, as follows:

"There cannot be a valid sale of any land which is not liable to taxation. Thus public land, such as land belonging to a state or to the federal government, cannot be sold for taxes. Similarly, land dedicated to a public use cannot be sold for taxes."

Most of the cases in which the question of the validity of tax proceedings against public property has been raised have been cases in which a valid tax had been levied upon the property prior to its acquisition by the city or state and its dedication to a public use, and the question has been the validity of the proceedings conducted for the collection of the taxes after the land was so acquired and dedicated. Even under those circumstances the rule has been well established that all of such latter proceedings are null and void. This is a stronger case for the application of the rule for this property had been dedicated to a public use long before any attempt was made to have it taxed.

From the syllabus prepared by Justice Bratton, the author of the opinion, for the Supreme Court of New Mexico in the case

of State v. Locke, 29 N. M. 148, 219 Pac. 790, 30 A. L. R. p. 407, we quote:

"Property which is acquired by the state in its sovereign capacity is thereupon absolved and freed of a further liability for the taxes previously assessed against it, and a subsequent sale thereof for such taxes is void."

The Supreme Court of Minnesota in Foster v. Duluth, 140 N. W. 129, 130, 48 L. R. A. N. S. 707, wrote:

"* * * proceedings for the assessment of taxes against public property, or for their collection by judgment and sale, are absolutely void. * * *."

To the same effect is this language taken from the opinion in Gachet v. City of New Orleans, 52 La. Ann. 813, 27 Southern 348, 349:

"* * * It follows that the tax collector was without authority to proceed as he did in the attempt to enforce payment of taxes claimed to be due the state for 1885, and that his action in the premises was void. Neither the adjudication made of it by him to the state, nor his later transfer of the state's title to Sawyer, can be adjudged to have had any effect. Sawyer acquired no title, and could convey none to the plaintiff herein. * * *."

In accord is the Supreme Court of Mississippi in City of Laurel v. Weems, 100 Miss. 335, 56 Southern, 451, 453:

"After the municipality purchased this lot, the taxing officers could not take any further steps looking to the collection of the tax, and the subsequent sale of the land for the taxes was a nullity. The purchaser at the sale got no title, because it was beyond the power of the officers to sell."

And the Supreme Court of Washington in Gasaway v. City of Seattle, 52 Wash. 444, 100 Pac. 991, 994, 21 L. R. A. N. S. 68, points out that nothing was sold at the tax sale except the interest of the alleged owner and, since he had no interest, nothing passed. We quote from that opinion as follows:

"The city having taken the full title, the county had nothing to sell under its foreclosure proceedings. Its right was limited to the sale of the interest of the owner. At the time he had no interest. 'No one can obtain an interest in the land sold that the defendant in the tax suit never held or owned.' Moore v. Woodruff, 146 Mo. 597, 48 S. W. 489. Where land was sold as the property of an individual, but was in fact owned by the state, the Supreme Court of Ohio held: 'The title to these lands being

in the state, the auditor of Warren county had no authority to put the lands upon the duplicate for taxation, and the tax sale and the deed of the auditor were void, and conferred no right upon the purchasers to hold the lands.' State v. Griftner, 61 Ohio St. 201, 55 N. E. 612. * * *."

Authorities could be multiplied, but further quotations would be superfluous. We cite, as being in harmony with the foregoing, City of Harlan v. Blair, 251 Ky. 51, 64 S. W. (2d) 434; Lancy v. City of Boston, 168 Mass. 128, 71 N. E. 302; Smith v. City of Santa Monica, 162 Calif. 221, 121 Pac. 920, and State v. Snohomish County, 71 Wash. 320, 128 P. 667.

■ From the foregoing the conclusion follows that the tax deed from the sheriff to Earnest was not merely voidable, but was an absolute nullity and passed no title whatever to him, and since he acquired no title, respondent acquired none. It was therefore not necessary for the city to procure a judgment setting aside the tax judgment, for, since under the allegations the property has been continuously in its possession, it could have ignored any claim asserted under the tax sale. But it chose rather to have respondent's claim judicially decreed to be unfounded, and for that purpose instituted this proceeding, praying "that this Court enter its order setting aside every step in said tax suit in Cause No. B-5492 and hold the same null and void and of no force and effect, and for such other and further relief in law or in equity to which it may be justly entitled." Such a proceeding is an action to remove cloud from title and is not barred by the four years statute of limitation. Texas Co. v. Davis, 113 Texas 321, 254 S. W. 304, 255 S. W. 601; State Mortg. Corp. v. Ludwig, 121 Texas 268, 48 S. W. (2d) 950.

In her reply to the application for writ of error the respondent advances the theory that the case is moot, In support thereof she attaches certain tax receipts indicating that the city has accepted taxes on this property from her since this suit was instituted. On that basis this argument is pressed: "The acceptance of the taxes from defendant in error constitutes an admission of ownership of the property by defendant in error, and this being true, the city has no legal right to prosecute this appeal." The point is overruled. In the collection of taxes a city is discharging a governmental function and cannot be bound or estopped by unauthorized acts of its officers in the performance of that function. City of San Angelo v. Deutsch, 126 Texas 532, 91 S. W. (2d) 308. The tax collector had no power to execute any instrument which would divest the city of its title to this property or to effect that result by the acceptance of tax money.

What is written above is on the case alleged, that is, that the land in suit is a part of a public street. But we do not mean to imply that, absent a statute authorizing such procedure, the officers of a city may create a valid tax lien in favor of the city on land owned by the city which has not been dedicated to a public use and through foreclosure proceedings and a sheriff's deed divest the city of its title thereto.

It is our order that the judgments of both courts below be reversed and the cause remanded to the trial court.

Opinion adopted by the Supreme Court July 11, 1945.