## PUCKETT et al. v. ROLISON.
### No. 9540.

Court of Civil Appeals of Texas. Austin.
April 3, 1946.

Rehearing Denied April 24, 1946.

Cox & Cox, of Sherman, for appellants.

Geo. L. Hamilton, of Sherman, for appellee.

McCLENDON, Chief Justice.

"This suit involves validity of tax judgment in favor of a home rule city, and legal and equitable rights to redeem, and waiver of any right of forfeiture city may have had." (Appellants' brief.) The case was tried to the court upon agreed statement of facts which shows:

The property was located in Sherman, a home rule city, that had by charter adopted "all lawful remedies for the enforcement of taxes." It was the community property and homestead of E. W. and Nannie Neagle, husband and wife. On October 1, 1929, the City brought suit against the Neagles and one Peterson (executor, 'etc.) for city taxes for the years 1919 to 1928, inclusive, except 1922, which had been paid, aggregating $347.99, including interest, penalty and cost, and to foreclose its tax lien on the property. Neagle died intestate October 5, 1929, and Mrs. Neagle acquired the property as his only heir at law, there being no children. No suggestion was made of Neagle's death, as required by Vernon's Ann.Civ.St. Art. 2080 (now Rule 152, Texas Rules of Civil Procedure), and no pleading filed showing there was no administration on his estate, or no necessity therefor. Nor does the record show there was no administration or necessity therefor. Citation issued to Mrs. Neagle and Peterson November 8, 1929, commanding them to appear at the next regular term of court to be holden "on the 1st Monday in Nov. A.D. 1929," which was November 4, 1929, already past when the citation issued and therefore an impossible date. Mrs. Neagle and Peterson were served 11/20/29. Default judgment was rendered June 17, 1930, against Mrs. Neagle personally for $347.99 and costs, and against her and Peterson foreclosing the tax lien. Order of sale was issued August 11, 1930, and the property was sold

to the City October 7, 1930, for $354.36, that being the amount of judgment and costs; and the judgment was credited with that amount. Sheriff's deed to the City was executed December 27, 1930, and recorded February 4, 1931. Mrs. Neagle continued to live on the property until her death, November 13, 1944. She died intestate, and her sister (appellant Laura Puckett), who had lived with her on the property for several years, continued to occupy it with her son, appellant Ben Puckett. Mrs. Neagle continued to assess the property in her name for city taxes for each year beginning with 1930 until her death in 1944, but none of the taxes were paid. We quote from the agreed facts:

"The City of Sherman in August, 1941, sent Mrs. E. W. Neagle a delinquent tax notice for the years 1919 through and including 1940 with the exception of 1922, containing an itemized statement of the taxes, interest, penalty and court costs, notifying her that 'taxes were delinquent on property owned by her and that unless the owner or owners of the land or lots described herein shall pay to the Tax Collector of said city the amount of taxes, interest, penalties and cost set forth in this notice within thirty days from the date of this notice, then in that event the City Attorney will institute suits for collection of such moneys and for foreclosure of the Constitutional lien existing against such lands or lots.' On June 19, 1943, the City wrote Mrs. E. W. Neagle as follows:

, "'It is shown on the city tax rolls that you are delinquent in the payment of your city taxes. The City Commission has instructed me as City Attorney to take the necessary steps for the collection of all delinquent taxes due the city. If this indebtedness is liquidated by July 15, 1943, it will save you the embarrassment of a suit and save additional costs that would accrue if suit was filed.

"'You may contact the City tax office on or before this date for a full statement of taxes owed by you and all payments are to be made at the City Tax office.

"'It is not the wishes of the city authorities to file any tax suit but it will be necessary to do so unless this indebtedness is properly taken care of.'"

In January, 1945 (after Mrs. Neagle's death) the City obtained ex parte a writ of assistance upont its judgment, which was never executed. The Pucketts were not parties to this proceeding. Upon hearing of it they "visited the City Attorney and tax assessor" and were informed about the middle of January, 1945, that if they would pay all taxes, interest, penalties and costs, they (the city attorney and assessor) would recommend to the city commission that a quitclaim deed be executed to the heirs of Mrs. Neagle. The Pucketts "failed to raise the necessary amount then."

The latter part of January, 1945, the City advertised the property for sale asking bids at its February 4, 1945, meeting, reserving the right to reject any and all bids. On that day Mrs. Puckett (having obtained the necessary funds) filed with the commission a bid reading:

"Mrs. Laura Puckett, one of the heirs of Nannie Neagle, deceased, former owner of 1031 S. Montgomery Street, Sherman, Texas, on behalf of the estate of Nannie Neagle, deceased, submits the following bid for the property: Pay all taxes, interest and penalty due the city and assume the State and County taxes, and agrees to stand all expense in perfecting title to the property including abstract expense, and to settle with B. F. Puckett his claim for improvements placed on the property.

"(Signed) Mrs. Laura Puckett,
"Present occupant and
one of the heirs of
Nannie Neagle, deceased."

At the same time she tendered, on behalf of Mrs. Neagle's heirs, the amount of taxes, etc., due. Several other bids were filed, including that of C. L. Rolison, which was for $2,058, and was accepted, the consideration paid, and the property deeded by the City to him.

"The State and County were not made parties to the City's suit for taxes, and they have never by suit sought foreclosure

of their lien. However, E. W. Neagle during his life and Mrs. Neagle since his death has rendered and the State and County has assessed their taxes against the property and the Neagles as owners, and at this time there are due and assessed against the owners of the property that is R. W. Neagle and his wife taxes in approximately the sum of $260.00."

During Mrs. Neagle's life no demand was made of her either for possession of the property or for rent; and no credit for taxes covered by the judgment or those thereafter assessed was ever made on the city tax rolls until after Rolison's purchase, when all such taxes were so credited.

It was admitted that Rolison took the property "subject to any legal or equitable rights of the heirs of Nannie Neagle."

The suit was brought by Rolison against the Pucketts for title and possession of the property and for rentals. The Pucketts filed a cross-action, impleading the City, setting up the invalidity of the tax judgment on various grounds, and asserting the right to redeem from the city tax lien and renewing the previous tender, and seeking removal of cloud cast upon the Neagle heirs' title by the City-Rolison deed. The judgment was in favor of Rolison against the Pucketts for title and possession of the property, and for $25 per month rental from February 25, 1945, upon which a refund of $100 was allowed to cover improvements on the property made by Ben Puckett. The Pucketts have appealed.

Appellants have briefed the case under eleven points which urge various grounds of invalidity of the tax judgment and waiver of the City's rights thereunder. Since we are sustaining the grounds urging waiver, it will not be necessary to consider the others.

Articles 7339 and 7340, R.C.S. 1925, read:

Art. 7339: "Any delinquent taxpayer whose lands have been returned delinquent or reported sold to the State for taxes due thereon, or any one having an interest therein, may redeem the same at any time before his lands are sold under the provisions of this chapter, by paying to the collector the taxes due thereon since January first, 1885, with interest at the rate of six per cent per annum and all costs and the penalty of ten per cent."

Art. 7340: "Where lands or lots shall hereafter be sold to the State or to any city or town for taxes under decree of court in any suit or suits brought for the collection of taxes thereon or by a collector of taxes, or otherwise, the owner or any one having an interest in such lands or lots shall have the right at any time within two years from the date of sale to redeem the same upon payment of the amount of taxes for which sale was made, together with all costs and penalties required by law, and also payment of all taxes, interest, penalties and costs on or against said land or lots at the time of the redemption."

Appellants contend that Art. 7339 applies, and that the right to redeem existed up to the time the City sold the property; and since the Pucketts tendered the amount due on the property prior to such sale, the tender should have been accepted. If Art. 7339 stood alone in the statute it might be given this construction. It is inconsistent with Art. 7340, and since it does not expressly refer to sales under judicial foreclosure and Art. 7340 does, it must be construed as applying to sales other than under judicial foreclosure.

We base our conclusion that the City waived its rights acquired under the foreclosure sale, upon the following considerations:

In the case of League v. State, 93 Tex. 553, 57 S.W. 34, 35, Associate Justice Brown writing, it was held: "No attack is made upon the sale, nor upon any of the proceedings leading up to it; and it stands before the court, under the defendant's allegations, as a valid sale, *by which the title passed to the state.* The *state, having acquired the title, had the power to waive its rights,* and, in order to perfect the claim beyond all dispute, to foreclose its lien on the land, as against the then claimant, and, in doing so, had authority to prescribe such terms as it deemed proper and just." (Emphasis added.)

We can think of no valid reason why the same principle should not apply equally to

the City. The property had been acquired by it under its judgment to recover its taxes. While the judgment recited proper service, and therefore (assuming its validity otherwise) could not be collaterally attacked on account of improper service, nevertheless it was rendered upon a void citation (see 38 Texas Jur., p. 817, and authorities cited under Note 2), and could have been set aside in a direct proceeding by suit brought within four years after its date. Subject to such direct attack, the City's title to the property became absolute upon expiration of the two-year redemption period. Thereafter no city taxes were legally assessable against the property, nor could state and county taxes be properly assessed against it during at least a reasonable time within which the City might try to sell the property. See City of Austin v. Sheppard, Tex., 190 S.W.2d 486. The continuing acts of the City in accepting renditions of said property after its title became vested, during the two-year period remaining of the four-year period in which said judgment was voidable upon direct attack, and thereafter during the life of Mrs. Neagle, were inconsistent with and repugnant to a claim of right under said foreclosure judgment, and constituted clear and unequivocal evidence of waiver of any right the City might have under such judgment, and of any title it might have acquired thereunder.

Appellee contends that the acts in connection with the continued assessment of said property and demand for payment of taxes thereon and threats to institute suit for such taxes if not paid, were the unauthorized acts of city officials and were not binding upon the City; citing the recent case of City of San Antonio v. Earnest, Tex., 188 S.W.2d 775. That case bears no pertinent analogy to that at bar. The property there was a part of a public street of the city, was not subject to taxation, and the city did not have the power to waive the rights of the public there-

in, even had the city acquiesced in or been a party to the acts by which Earnest sought to acquire the city's title by tax assessment and foreclosure, which clearly was not the case. Here the agreed facts showed that the City itself sent the delinquent tax notices, demanded payment of the taxes, including those embraced in its former judgment, and threatened suit in default of such payment. Conceding, as we do under the holding in the League case, that the City had the power to waive its title, the evidence conclusively shows that it did so.

While this holding disposes of the appeal, and renders unnecessary consideration of other issues, we think a serious question is presented in the failure to suggest the death of E. W. Neagle, and of showing by amended pleading and by the record (if such were the case) that there was no administration upon his estate and no necessity therefor. It is now well established that, although the homestead is not subject to the debts of the estate, and in the absence of administration thereon or necessity therefor, may be sold under foreclosure in the district court, of a valid lien thereon; a sale under such foreclosure must be made in the probate court, if administration be pending therein. Gregory v. Ward, 118 Tex. 526, 18 S.W.2d 1049; Connor v. Williams, 130 Tex. 572, 112 S.W.2d 709; Federal Land Bank of Houston v. Tarter, Tex.Civ.App., 86 S.W.2d 523 (error dis. C.J. but expressly approved on this point in the Connor case above).

Appellee cites upon this point the cases of Equitable Building & Loan Ass'n v. Jones, Tex.Civ.App., 36 S.W.2d 252, and Hale v. Hannah, Tex.Civ.App., 56 S.W.2d 259. It is not necessary to analyze these cases. The pleadings in each showed that there was no necessity for administration.

The trial court's judgment is reversed and the cause remanded.