## C. L. ROLISON ET AL. V. BEN PUCKETT ET AL.

No. A-918. Decided November 6, 1946.
Rehearing overruled December 31, 1946.
(198 S. W., 2d Series, 74.)

*Geo. L. Hamilton,* of Sherman, for petitioners.

It was error for the Court of Civil Appeals to hold that the act of the city tax assessor in assessing the property in the name of E. W. Neagle, the original owner of the property, after the property had been sold by the city to plaintiff Rolison, constituted a waiver of all of its rights acquired under the tax judgment, and that no city taxes were legally assessable against said property during a reasonable time in which the city might try to sell same. City of San Antonio v. Earnest, 144 Texas 83, 188 S. W. (2d) 775; Clark v. Puls, 192 S. W. (2d) 905.

*Cox & Cox,* of Sherman, for respondents.

The continued acts of the city, for a number of years in accepting renditions of property which it under judicial foreclosure had deeded to itself, constitutes unequivocal evidence of a waiver of any of its rights under that judgment. Krause v. City of El Paso, 101 Texas 211, 106 S. W. 121; Cawthorn v. City of Houston, 231 S. W. 701; Payne v. First Natl. Bank, 291 S. W. 209.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves the validity of a tax judgment in favor of the City of Sherman, Texas, a home rule city, which is attacked

in a collateral proceeding, and an alleged waiver by the city of such rights as it acquired under the judgment, foreclosure, and sheriff's sale.

Before 1930 the property involved was owned as community property by E. W. and Nannie Neagle, husband and wife, and they occupied it as their homestead. As shown by the facts, detailed below, in 1930 the city obtained a tax foreclosure on the property and a sheriff's deed thereto; but possession was not demanded by the city, nor was the property surrendered to it. Respondents now occupy the property as heirs of Nannie Neagle.

In 1945 petitioner C. L. Rolison purchased the property from the city at public sale, and he instituted this suit for title to and possession of the land. Respondents filed a cross action against Rolison and the City of Sherman, and likewise made other heirs of Nannie Neagle parties to the suit. The cross action set up the alleged invalidity of the judgment under which the city acquired title, and alleged that the city had waived whatever rights it acquired under such judgment, foreclosure, and sale. They tendered into court the amount of all taxes, penalties, and interest owing, and demanded the right to redeem the property. The trial court, sitting without a jury, upheld the sale to the city in 1930 and the sale by the city to Rolison in 1945, and entered judgment for petitioner Rolison for title and possession. The Court of Civil Appeals reversed and remanded the cause without passing on the validity of the tax judgment, holding that the city had waived its rights under the sale to it in 1930, and that it was, therefore, without power to sell the land to Rolison. 193 S. W. (2d) 974. Writ of error was granted by this Court on that point.

The facts are stipulated. After acquiring the property in 1917 as their community property, E. W. and Nannie Neagle became delinquent in the payment of their taxes. Delinquent tax notices were sent by the city to E. W. Neagle, but such notices recited that the property was owned by E. W. and Nannie Neagle. In 1929 the city instituted suit, naming E. W. and Nannie Neagle and an alleged lien holder as defendants, and prayed for judgment for the taxes and a foreclosure of its tax lien. After the suit was filed, but before citation was issued, E. W. Neagle died, intestate and without leaving any children. No amended petition was filed, nor was any suggestion of his death filed in the case. No showing was made that there was an administration on his estate, nor was it shown whether or not one was necessary.

Thereafter citation was issued and served upon Nannie Neagle and the lien holder, both of whom failed to answer. Judgment was rendered by default against "Nannie Neagle, a feme sole," for the amount of the taxes, etc., and for foreclosure of the tax lien against all parties. The judgment recited due service and that the cause was dismissed as to the defendant E. W. Neagle.

The city purchased the property at the foreclosure sale for the amount of the judgment and costs in the tax suit, but the Neagle tax account was not credited with any amount by the city until 1945. The sheriff deeded the property to the city under the above sale in December, 1930, and the deed was duly recorded on February 4, 1931.

Notwithstanding the sale to the city, Nannie Neagle continued to live on the property until her death in 1944. Each year, from 1930 to 1944, Nannie Neagle rendered the property to the city for taxes, and it carried the rendition in her name, and sent her annual tax statements. No taxes were ever paid, nor was any rent requested or paid, and no request or demand for possession of the property was made by the city. In 1941 the city threatened suit if the taxes were not paid for the years from 1919 to 1940, the year 1922 excepted. Again in 1943 a similar demand for tax payment was made under threat of suit and foreclosure.

About 1940 respondent Mrs. Laura Puckett, a sister of Nannie Neagle, moved on the property with Nannie Neagle; and about 1942 Ben Puckett, Laura's son, also moved on the premises. Nannie Neagle, who had no children, died intestate in 1944. Her sister Laura Puckett and her nephew Ben Puckett continued to reside on the property, and are still residing there.

In early January, 1945, the city, at an ex parte hearing unattended by any representative of the Pucketts, procured a writ of assistance. The writ was never executed, but when Mrs. Puckett learned of it she and Ben Puckett visited the city attorney. Ben Puckett also visited the tax assessor. In mid-January, 1945, the Pucketts were informed by the tax assessor and the city attorney that if they would pay all taxes and other charges against the property, the tax assessor and the city attorney would recommend to the city commission the execution of a quit-claim deed by the city to the Pucketts, or to any of the heirs of Nannie Neagle who would make such payment. The Pucketts, however, failed to raise the money to make such payment. Thereafter, in the latter part of January, 1945, the city

advertised the property for sale, requiring that the bids be submitted by February 5, 1945, and reserving to itself the right to reject any and all bids. Some six or eight bids were received. The Pucketts offered to pay an amount equal to all taxes and other charges accrued against the land, totaling $1,666.00; but petitioner Rolison bid $2,058.00, which bid, being higher, was accepted by the city. The city thereupon credited on its tax rolls all city taxes assessed against the Neagle land, and agreed to pay all State and County taxes against such land when the amount should be determined. There was left a balance of approximately $532.00, and this the city proposed to keep as a profit. It is admitted that Rolison took the property subject to any legal or equitable rights of the heirs of Nannie Neagle. After making the above-mentioned purchase, Rolison instituted this suit for title to and possession of the property.

No question is here raised as to the power of the city under the statute to bring the suit for foreclosure of its tax lien in 1929, nor is there any question as to the power of the district court to render its judgment and order the foreclosure, except as to the matter of jurisdiction and the inclusion of proper parties consequent to the death of Mr. Neagle. The power of the sheriff to execute the deed to the city and the power of the city to hold such property under the judgment and the deed are not questioned. Nor is there any attack on the manner of sale by the city in 1945 after it had sought competitive bids. The error assigned is that the property should have been turned back to the respondents upon their tender of all back taxes, interest, and all other charges against the property. On the other hand, the city does not contend that it does not have the power to waive its title obtained through the sheriff's deed in 1930, under the case of League v. State, 93 Texas 553, 57 S. W. 34. It is not necessary to decide that point under the disposition of this case. The city contends only that there was no such waiver, and that under the facts of this case it will not be necessary to determine the power of a municipal corporation to waive a title obtained through a judicial foreclosure.

Therefore the record in this case presents three issues: (1) Did the district court have jurisdiction to foreclose the tax lien, and did the city acquire title to the property under such foreclosure proceedings? (2) On collateral attack is the judgment on which the sheriff's sale was based void? (3) Assuming the city's power to waive its tax title, did the conduct of the city in dealing with the property and those who occupied it from 1930 to 1945 constitute an estoppel or waiver by it of its tax title?

Respondents contend that the district court did not have jurisdiction in the 1930 suit, because it was neither alleged nor proved by the city that there was no administration on the estate of E. W. Neagle pending in the probate court at the time the tax foreclosure proceedings were pending, nor was it shown that there was no necessity for an administration on such estate.

We are not here dealing with a case where the facts show that an administration on an estate was pending at the time the tax foreclosure proceedings were filed, or that the necessity existed for such an administration. It would be useless to discuss cases involving such facts.

It was alleged by the city that the property was owned by the husband and wife, though the property was assessed against the husband. Citation was issued only to the wife and an alleged lien holder, and service was had on them. Neither party who was served with citation appeared or answered. The court dismissed the cause as to the husband, rendered judgment against the wife for the amount of the taxes, and decreed a foreclosure of the tax lien against all parties. The judgment recited due service. There was no appeal from the judgment.

■ It is admitted that the property was the community homestead of the husband and wife, and that the husband died after suit was filed, but before judgment was entered. We are not concerned here with the personal judgment taken against the wife, but only as to the power of the distsict court to foreclose the tax lien under the above facts. See Solomon v. Skinner, 82 Texas 345, 18 S. W. 698.

■ The district court assumed jurisdiction of this case, and its judgment is regular on its face and imports absolute verity. This being a collateral attack on the judgment of the trial court, in order to void the judgment the burden rested upon respondents to show affirmatively that at the time the judgment was rendered an administration on the property involved was pending, or that there was a necessity for such an administration, or that there was some other fact which would defeat the jurisdiction of the trial court. This was not done. When such a judgment is attacked collaterally, every reasonable presumption to uphold it will be indulged. White v. White, 142 Texas 499, 179 S. W. (2d) 503; Easterline v. Bean, 121 Texas 327, 49 S. W. (2d) 427; 25 Texas Jur., p. 830, sec. 319.

■ Upon the death of the husband intestate, there being no chil-

dren, the title to the property passed to the wife under the statutes of descent and distribution. Article 2578. Under Article 3499 it is provided that the homestead shall not be liable for the payment of any of the debts of the estate, except for the purchase money thereof, the taxes due thereon, and for work and material used under certain circumstances. In the absence of an administration and in the absence of any showing of the necessity for an administration, or any other jurisdictional defect, the district court in the 1930 suit had the power to order a foreclosure of the tax lien against the wife, she then having title to the property. Having had the power to act, its judgment is not now subject to collateral attack, even though it may have been erroneous and voidable. See White v. White, supra. We therefore hold that the title to the property passed to the city under the judgment and foreclosure sale and the sheriff's deed in 1930.

■ In the collection of taxes a city is discharging a governmental function, and it cannot be bound or estopped by unauthorized acts of its officers in the performance of that function. Republic Insurance Co. v. Highland Park Independent School District, 141 Texas 224, 171 S. W. (2d) 342; City of San Angelo v. Deutsch, 126 Texas 532, 91 S. W. (2d) 308. It is generally held that the mere levy and collection of taxes on property by a municipality does not estop it from asserting title to such property. City of San Antonio v. Earnest, 144 Texas 83, 188 S. W. (2d) 775; 3 McQuillin on Municipal Corporations (Rev. Ed.), p. 1072, sec. 1261; Rossire v. Boston, 4 Allen 57 (Mass.); Hull v. Cedar Rapids, 111 Iowa 466, 83 N. W. 28.

It is not shown that the city attorney and the tax assessor were authorized to waive the rights of the city acquired under the foreclosure proceedings. Furthermore, under the facts, no taxes were ever paid or tendered after 1930 until 1945. Nor are there any facts in the record to show how the acts of the city in any way misled the Neagles or the Pucketts, or caused them to materially change their position to their detriment. They simply enjoy the use of the land rent free, without paying taxes thereon, and it is not shown that they were in any respect injured. The city received no material benefit from the land or its occupants during that period. The only official acts of the city commission in connection with this matter were that they caused the property to be advertised for sale in 1945, accepting the highest bid, and, by resolution, caused a special warranty deed to the property to be executed and delivered to the petitioner

C. L. Rolison. The promise of the city attorney and the tax assessor to recommend to the city commissioners that the property be deeded by the city to the Pucketts upon their payment of all taxes charged against the property could not bind the city. City of San Angelo v. Deutsch, supra; City of San Antonio v. Earnest, supra.

We therefore hold that the city was not estopped to deny its ownership under the sheriff's deed of 1930.

■ Nor do we think that under the facts the city waived its right to claim this property, and the Court of Civil Appeals erred in so holding. A waiver is the intentional relinquishment of a known right,—or, as applied to the facts of this case, such official acts as would warrant inference of the relinquishment of such right. The Praetorians v. Strickland (Com. App.), 66 S. W. (2d) 686; 43 Tex. Jur., 891.

The trial court made no findings of fact or conclusions of law. We are of the opinion that the facts heretofore set out as being insufficient, as a matter of law, to constitute an estoppel, are likewise insufficient, as a matter of law, to constitute a waiver, as the city was acting in its governmental capacity. Furthermore, the judgment of the trial court being in favor of the city's grantee Rolison, we must indulge the presumption that the trial court resolved such fact issue of waiver in favor of the city and its grantees.

There being no estoppel or waiver, the Neagles were required to redeem the land within two years.

■ There are many articles of the statutes relating to redemption of property after sale for taxes. That they are not all entirely accordance with each other is quite manifest. We will discuss some of them.

Article 1065 provides that all lands or property sold under a decree of the court for taxes due any incorporated city may be redeemed by the owner thereof within two years from the date of the deed, upon payment of the sum stated. Article 7339 is not applicable, since it deals exclusively with sale by tax collectors. Article 7340 provides that when land or property has been sold under a decree of the court, the owner shall have the right at any time within two years from the date of the sale to redeem same, by paying the amounts prescribed in that article.

The foregoing articles were in force in 1930, when this sale was made.

In response to Section 13 of Article VIII of the Constitution, adopted in 1932, the Legislature enacted Section 7345b, which provides that the owner shall have the right to redeem the property within two years from the date of such sale, by complying with the terms of that article.

See also Article 7283; and for a compilation of the various articles of the statutes relating to this question, see Mahany on Texas Taxes (1946 ed.), pp. 250-257.

It is undisputed that the sheriff deeded this property to the City of Sherman in December, 1930, and the deed was recorded on February 4, 1931. It unquestionably appears that respondents did not meet the requirements of any article of the statutes authorizing a redemption of this land within any certain period of time.

Nannie Neagle had four years within which to bring a direct suit to question the validity of the judgment after its rendition, but she did not avail herself of this privilege. The judgment of foreclosure was not void, and under the facts of this case the city, by virtue of such judgment and sale thereunder, became the owner of the title to this property after the two-year redemption period expired.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered November 6, 1946.

Rehearing overruled December 31, 1946.