CONSOLIDATED ELECTRICAL DISTRIB-
UTORS OF EL PASO, INC.,
Appellant,

v.

Emilio PEINADO, d/b/a Peinado Develop-
ment Company, Appellee.

No. 6215.

Court of Civil Appeals of Texas,
El Paso.

March 8, 1972.

Mark F. Howell, El Paso, for appellant.

Pearson & Speer, Ray Pearson, Thomas H. Nation, El Paso, for appellee.

OPINION

WARD, Justice.

This action was brought by the plumbing subcontractor's materialman, Consolidated Electrical Distributors of El Paso, Inc., against the general contractor, Emilio Peinado, who built the Fiesta Apartments in El Paso. The cause of action was based on an alleged breach of the terms of a written joint check agreement entered into between the general contractor, Peinado, the plumbing subcontractor, Barton-Moon Plumbing Company, and the materialman, Consolidated Electrical, which provided that certain checks issued by Peinado on the plumbing would be payable jointly to the plumbing subcontractor, Barton-Moon, and to the materialman, Consolidated Electrical. Trial was to a jury which determined that the plaintiff, Consolidated Electrical, had waived its rights under the terms of the joint check agreement. The trial Court then rendered judgment on the verdict for the defendant, Peinado. We affirm the judgment of the trial Court.

Previous to November, 1967, Emilio Peinado as the general contractor had

accepted a bid from Barton-Moon to perform all plumbing on the project for the sum of $57,000.00. Payments on the contract were to be based on progress reports furnished at the end of each month by Barton-Moon and were to be paid by the tenth of the month following less ten per cent retainage. Barton-Moon was engaged in the general plumbing contracting business and purchased all of its material from Consolidated Electrical. It was obvious that Barton-Moon was in a financially distressed condition, and, to assure itself, Consolidated Electrical had secured some fifty joint check agreements covering the various projects which had been undertaken by Barton-Moon. Following this policy, on November 9, 1967, Consolidated Electrical, Barton-Moon, and Peinado entered into the written tri-party Joint Check Agreement, under our consideration, the first part of which provided as follows:

"1. That the aforesaid parties agree that unpaid invoices which have heretofore been rendered or may hereafter be rendered by the said materialman to said Subcontractor for materials sold by said materialman to said Subcontractor for use in said project shall be paid for by a negotiable check made by the said Prime Contractor payable jointly to the said Subcontractor and the said materialman. Said checks shall be delivered to the said materialman within the credit periods allowed to the said Subcontractor. Attached hereto is a true list of the invoices heretofore rendered by said materialman to the said Prime Contractor and presently unpaid by said Subcontractor. The said Prime Contractor will deliver a joint check to the said materialman for the total sum of all unpaid invoices shown on the attached list which are due on the same date as shown on said attached list on or before such due date.

2. The said materialman will present each such joint check to the said Subcontractor and the said Subcontractor will immediately endorse said joint check and return the same to the said materialman.

3. All joint checks shall be in payment of a specific unpaid invoice or invoices and shall be in the amount of the exact total of said unpaid invoice or invoices."

Additional provision of the agreement provided that it did not constitute an assignment of funds nor payment but constituted security for payment; that rights against bondsmen, and lien rights would not be affected. No list of invoices were attached to the agreement.

Performance of the express and implied duties and obligations of the agreement can be said to have been wholeheartedly ignored during the construction of the project. The very heart of the agreement is that Peinado will deliver to Consolidated Electrical a joint check of specific unpaid invoices in the exact amount of the invoice or invoices within the credit period allowed to Barton-Moon. The credit period on the invoice provided for payment within thirty days. This was later extended by agreement between Consolidated and Barton-Moon to ninety days, and this later partially abrogated by the taking of a note as herein discussed. No check was ever issued covering any unpaid invoice or invoices. Again, at the heart of the agreement is an implied condition that either Barton-Moon or Consolidated would get the unpaid invoices to Peinado. None were ever presented to Peinado until after completion of the project. Peinado continued to pay to Barton-Moon the monthly progress reports less the ten per cent retainage with the final payment of the $57,000.00 contract being made on September 12, 1968, by check for $1,400.00, after the plumbing construction contract had been completed. It was only after November, 1968, that any demand was ever made by the material supplier to Peinado. At that time it was asserted that $38,592.44 was owing by Barton-Moon to the supplier for the unpaid materials used by Barton-Moon on the project. This was after Barton-Moon had become insolvent

and was well on its way toward bankruptcy. Suit being instituted for this amount, Peinado answered that a condition precedent to any obligation arising on his part under the terms of the joint check agreement was the furnishing by either Consolidated Electrical or Barton-Moon of unpaid invoices subject to the joint check agreement. In addition, the defenses of waiver and estoppel were urged.

The case was submitted on the theory that the waiver issue was applicable, and we will ignore the implied condition precedent. Appellant in this regard presents to us "no evidence" and "insufficient" points to attack the jury finding that the appellant had waived its right to be paid by negotiable joint check. Considering the legal insufficiency point first, we will of course consider only the evidence and the inferences arising therefrom tending to support the jury finding. In this regard, we are fortunate, as a review of the evidence shows that no dispute developed except in the area regarding the amount of unpaid for materials that were actually used in the Fiesta Apartment project. As pointed out, it was the contention of Consolidated Electrical that this amounted to $38,592.44. Peinado, asserted a less figure, and the jury determined the amount to be $19,171.22.

█ The joint check agreement is explicit in calling for the issuance of any joint check to be in the exact amount of unpaid invoice or invoices covering the materials furnished by Consolidated to Barton-Moon for use in the project. The agreement refers to a true list of the previously rendered and unpaid invoices which are attached. The prime contractor was obligated to deliver a joint check to the materialman for the total sum of the unpaid invoices. According to the exhibits of Consolidated, on that date there were invoices unpaid in the amount of $2,975.48, yet no list was attached nor was any information furnished to Peinado nor was any request made for the payment of this amount.

Again, the joint check agreement called for all of Peinado's checks to be delivered by Peinado to Consolidated. Yet, all checks paid by Peinado to Barton-Moon were always delivered to Barton-Moon. The first check, made payable under the plumbing contract, was dated December 11, 1967, was in the amount of $6,000.00, and was made payable to Barton-Moon Plumbing and Consolidated. After being delivered to Barton-Moon, it was thereafter endorsed and delivered to Consolidated which thereafter credited the Barton-Moon account. The January check on the contract was in the amount of $2,400.00, was made payable to Barton-Moon alone, but was endorsed by Barton-Moon and delivered to Consolidated, which credited the Barton-Moon account. The February 10, 1968, check on the contract was in the amount of $5,184.00, was payable to Barton-Moon and Consolidated, endorsed by Barton-Moon and delivered to Consolidated, which credited the Barton-Moon account.

It is significant to note that Consolidated records show that none of the checks from Peinado to Barton-Moon which were received by Consolidated were in the amount of any particular invoice or invoices, and, in fact, these checks were applied to other accounts than the Fiesta Apartment project. The first check for $6,000.00 was credited to some fifteen different accounts in varying amounts, none of which was the apartment project. The second check in the amount of $2,400.00 was credited to nine different accounts, none of which was the apartment project. The third check in the amount of $5,194.00 was credited partially to the Fiesta Apartment project and partially to the note of an open account. In fairness, it should be said that at the time of the later accounting, the apartment project was credited with these amounts.

The next check from Peinado to Barton-Moon was in the amount of $10,368.00. Consolidated's manager, Jerry Boswell, testified that he learned on March 13, 1968, that Barton-Moon had received this check from Peinado. At that time, Consolidated made no inquiry of Peinado as to why

such check was not payable jointly, just as it had made no inquiry as to why the January, 1968, check had not been made payable jointly.

It is further interesting to note that at the time Consolidated negotiated the December check in the amount of $6,000.00, its records reflect that it had sold more than $25,000.00 in supplies to Barton-Moon for use in the apartment project. At the time that Consolidated negotiated the check in the amount of $2,400.00, its records reflect that it had sold more than $30,000.00 in materials to Barton-Moon for use in the apartment project, and at the time Consolidated negotiated the February check in the amount of $5,184.00, its records reflect that it had sold to Barton-Moon nearly $40,000.00 worth of materials for use in the Fiesta Apartment project.

According to the records of Consolidated, the following is a list of the number of merchandise sales, together with covering invoices, made by Consolidated to Barton-Moon for the materials on the job:

| Previous to | December 1, 1967 | some 15 invoices |
|---|---|---|
| During | December, 1967 | 18 invoices |
| During | January, 1968 | 47 invoices |
| During | February, 1968 | 38 invoices |
| During | March, 1968 | 28 invoices |
| During | April, 1968 | 24 invoices |
| During | May, 1968 | 43 invoices |
| During | June, 1968 | 21 invoices. |

The June, 1968, invoices were the last ones made covering deliveries on this job. Of these 234 invoices covering sales of materials on the job, Consolidated never made an inquiry of Peinado as to why no joint check was ever made to cover any individual invoice or made to cover the total sum of any number of unpaid invoices.

The manager of Consolidated testified that they were interested in keeping Barton-Moon in business; that Barton-Moon was doing some $10,000.00 to $20,000.00 a month of business with Consolidated; that he knew that Barton-Moon was financially weak, and in March, 1968, he made an agreement with Barton-Moon to knock down the prices that they were being charged, in order that they could continue in business. Of most importance to us is that on March 13, 1968, Consolidated and Barton-Moon entered into an agreement whereby Barton-Moon signed a promissory note for the amount of money that they then owed to Consolidated, this note being payable to Consolidated in the amount of $700.00 a month.

· As stated by our Supreme Court in Massachusetts Bonding and Insurance Co. et al. v. Orkin Exterminating Company, Inc., 416 S.W.2d 396 (Tex.1967):

"Waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. Texas & P. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652 (1947); Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946). In Equitable Life Assur. Society of United States v. Ellis, 105 Tex. 526, 147 S.W. 1152 (1912), this Court held that waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by consideration, nor is it essential that it be based upon an estoppel. * * * Our inquiry with regard to the issue of waiver is whether the conduct of petitioner shows an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."

To the same effect, see United States Fidelity and Guaranty Company v. Bimco Iron and Metal Corporation, 464 S.W.2d 353 (Tex.1971); Terrazas v. Sullivan, 470 S.W.2d 904 (Tex.Civ.App.—El Paso 1971, writ ref'd n. r. e.). The facts, and in particular the acceptance by Consolidated Electrical of a note from Barton-Moon in March, 1968, for the amount then owing and payable $700.00 a month, manifest conduct entirely inconsistent with claiming the known rights available to it under the joint check agreement. The legal insuffi-

ciency points as to the jury finding of waiver are overruled. Further having considered and weighed all of the evidence and the reasonable inferences arising therefrom, the point as to the factual insufficiency of the evidence as to waiver is overruled.

 In connection with the waiver issue, the Court submitted a definition to the effect that "the term 'waiver' as used in this issue, is meant the intentional relinquishment of a known right, or such conduct as warrants an inference of the intentional relinquishment of such right." By objection and requested definition, the appellant has presented to us its contention that the trial Court erred by omitting from the definition the phrase "with full knowledge of the material facts" and by not further instructing that conduct, to constitute waiver, must be "voluntary so as to imply a voluntary determination, consciously and purposely to dispense with or forego the right." It is the position of the appellant that the inadequacy of the charge lies in the omission of the phrase "with full knowledge of the material facts" as Consolidated contends it did not know the method by which Barton-Moon was being paid during the construction. Maryland Casualty Company et al. v. Palestine Fashions, Inc., et al., 402 S.W.2d 883 (Tex.1966) and Stowers v. Harper, 376 S.W.2d 34 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.) support this position. However, the admitted facts are contrary to this contention. It was Consolidated's own invoices that were to be paid "within the credit period allowed to the said Subcontractor." The invoices themselves provided credit of thirty days. Before the promissory note was obtained from Barton-Moon, the credit period had been extended to ninety days by the appellant. The definition as given by the Court has long been approved. The Praetorians v. Strickland, 66 S.W.2d 686 (Tex.Com. App.1933); Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946). It is reasonably clear to enable the jury to understand the term, and the Court did not abuse its discretion in its definition. The last point of the appellant is overruled.

Cross-points are presented by the appellee that the trial Court erred in not withdrawing the case from the jury. With our disposition of the case, the points are not reached.

The judgment of the trial Court is affirmed.