Robert Paul FERRARI, Jr., Appellant,

v.

Jacob BAUERLE, Appellee.

No. 12185.

Court of Civil Appeals of Texas,
Austin.

Jan. 22, 1975.

Rehearing Denied Feb. 12, 1975.

Appellant and appellee, Jacob Bauerle, entered into a written agreement in August of 1970, in which appellant leased for seven years a parcel of land and improvements situated on South Lamar in Austin. The lease agreement was a printed one which was put in final form without the assistance of an attorney. The uses of the premises were stated in the second numbered paragraph of that agreement:

> Second. That the said premises shall be used for Bakery and associated purposes and traffic in foods and beverages. The Lessee shall have the right to cancel and terminate this lease on thirty days (30) written notice to the Lessor. and for no other purpose.

At the beginning of his tenancy, appellant operated an Italian restaurant known as "Ferrari's Pizza." After the sale of mixed drinks became lawful, appellant obtained permission from appellee to sell mixed drinks on the premises. In this regard, appellant spent considerable sums of money remodeling the premises. Though not important to the resolution of the appeal, it may be observed that appellant probably had the right to sell drinks without appellee's permission by virtue of the second numbered paragraph of the lease which permits the use of the premises for ". . . traffic in . . . beverages."

After appellant began serving mixed drinks, he changed the name of his business to "Ferrari Supper Club." In April of 1972, and in an effort to stimulate business, appellant initiated another change in his operation which was to provide, as entertainment, dancing girls who wore no clothing above the waist. Still searching for a more descriptive name for his business, appellant chose in June of 1972, the appellation, "Ferrari's 21 Club."

One response to appellant's change in the mode of operation of his leasehold was an increase in the fire insurance premium to appellee. Another response was from

Ronald A. Monshaugen, Houston, for appellant.

Hal H. Haralson, Austin, for appellee.

SHANNON, Justice.

This appeal concerns the construction of a written lease agreement. Appellant, Robert Paul Ferrari, Jr., has appealed from a judgment of the district court of Travis County permanently enjoining him from conducting "any form of live entertainment" on the premises of his leasehold. We will affirm that judgment.

the appellee landlord, who upon learning of the class of entertainment offered by appellant, made clear to appellant that upon his property he did not favor midnight shout and revelry, merry dance and jollity.[1]

After February of 1973, the landlord-tenant relationship rapidly deteriorated. In February, appellee asked that appellant pay the increase in the fire insurance premiums. On April 10, 1973, appellee requested appellant to vacate the premises as appellant had failed to pay the premium increase. In the summer of 1973, appellant was arrested for permitting "lewd" dancing on the premises. In August of 1973, appellee obtained a temporary injunction which forbade any kind of live entertainment in the premises.

After the entry of judgment in the case on appeal, and upon request, the court filed findings of fact and conclusions of law. The court concluded, among other things, that the portion of the lease quoted above " . . . prohibited using the said premises as a nightclub with live entertainment," and that appellee did not waive his right to enforce the terms of the lease as he never manifested an " . . . actual intention to relinquish his right."

Appellant complains that the court erred (1) in holding that the lease prohibited the conducting of live entertainment on the premises, (2) in holding that appellee had not waived his right to enjoin appellant for his breach of the lease, and (3) in holding that appellee was not precluded by laches from asserting his right to enjoin appellant for breach of the lease. Appellant *does not* attack that term of the judgment forbidding any form of live entertainment as being overbroad and in violation of Texas *Rules of Civil Procedure*, rule 683. We have not been presented with and will not express any opinion on that problem.

Preliminary to the discussion of appellant's first point of error it should be observed that the general rules governing the construction of written instruments apply to leases. Eckstine v. Webb Walker Jewelry Company, 178 S.W.2d 532 (Tex. Civ.App.1944, writ ref'd w.o.m.). As in other written instruments, the end sought in the construction of leases is the ascertainment of the intent of the parties as revealed by the language used in the lease. Words and phrases used in a lease contract will be accorded their ordinary and commonly accepted meaning. Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014 (1925). Parol evidence is admissible to explain ambiguities apparent on the face of the writing. 2 McCormick and Ray, Texas Law of Evidence § 1685 (1956). Doubt as to the meaning of the language of the lease is to be resolved most strongly against the lessor. Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784 (Tex.1966).

Without objection the court heard evidence from the parties as to what they had intended by the use of the language in paragraph two of the lease. Since we do not understand the terms of the second numbered paragraph of the lease to be ambiguous, we are of the opinion that the testimony of the parties as to their understanding of the meaning of the words used should not have been received, and though admitted without objection, that testimony is without probative value. Texarkana & Ft. S. Ry. Co. v. Brass, 260 S.W. 828 (Tex.1924).

Under his first point of error, appellant argues that the paragraph in question is "unclear" because of the positioning of the printed phrase, "and for no other purpose," with respect to the other part of that paragraph, and because a complete sentence is interposed between the first sentence and the printed phrase. Because the meaning of the second numbered paragraph is "un-

---

1. "Midnight shout and revelry,
   Tipsy dance and jollity."
   Milton, *Comus*, 1. 103

clear," says appellant, ". . . it is manifestly clear that neither appellee nor appellant intended at the time of the making of the lease to give effect to the phrase in question ['and for no other purpose'] and that it should be deleted from the lease as a matter of law."

■ We would agree that the composition of the second numbered paragraph is neither choice nor grammatical. Still, in our opinion, the use of the phrase, "and for no other purpose," shows an intention by the parties to limit the uses of the premises to those listed in the first part of the paragraph. Williams v. J. & C. Royalty Co., 254 S.W.2d 178 (Tex.Civ.App.1952, writ ref'd).

The first use permitted by the second numbered paragraph is for a "Bakery and associated purposes." A bakery may be described as any place used for the purpose of mixing or the baking of any food product of which flour or meal is a principal ingredient. "Associated purposes" of a bakery could well be the use of the premises for storage, display or sale of the bakery products.

The other permissible use of the premises is for "traffic in foods and beverages." The words "traffic in" are synonymous with the words "deal" or "deal in." A business dealing in "foods and beverages" is most usually thought to be either a mercantile establishment such as a grocery store, or a public eating house, such as a restaurant. Appellant did not claim in the trial of the case, that the term, "foods and beverages," was ambiguous. And in that connection, appellant did not tender evidence tending to show that "traffic in food and beverages" had a special local meaning which, within the contemplation of the parties, included the kind of entertainment furnished by appellant.

■ We conclude that the common and ordinarily accepted meanings of the rather prosaic terms, "Bakery and associated purposes" and "traffic in food and beverages" do not encompass, and may not be so

stretched to encompass the trooping of partially clad females.

■ Appellant's second and third points of error require a review of the record because appellant claims, in effect, by those points that the findings of the court respecting waiver and laches are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Relative to those contentions, it may be in order to observe that in a nonjury case the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. Where there is evidence of probative force to support the findings and the judgment of the trial court, such findings will not be disturbed, even though the evidence is conflicting and the reviewing court might have concluded otherwise. Corn v. First Texas Joint Stock Land Bank, 131 S.W.2d 752 (Tex.Civ.App.1939, writ ref'd).

■ A waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right. Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946), The Praetorians v. Strickland, 66 S.W.2d 686 (Tex.Comm'n App.1933, jdgmt. adopted). The trial court concluded that appellee did not waive his right to enforce the terms of the lease because he never intended to relinquish his right, and that he did not by implication waive that right by the acceptance of rents since he had no actual or personal knowledge of the unauthorized use of the premises until February, 1973. In this connection there is some authority to the effect that the receipt of rentals after a breach of the covenant as to the use of the premises is not a waiver. Tony v. McClelland, 283 S.W. 679 (Tex.Civ.App. 1926, writ dism'd).

■ There is some evidence to support the court's conclusions respecting waiver. Although before February of 1973, appellee may have heard from acquaintances and may have seen advertising about the entertainment offered by appellant, the

trial court found that he had no first-hand knowledge. Early in 1973, appellee visited the premises and complained of the type entertainment being conducted on the premises. Appellee told Ferrari, "I don't know what kind of people you are. . . . I am against what you are doing here and I want you out." Later, appellee requested that appellant pay the increase in fire insurance premiums. When appellant refused to pay those premiums, he asked that appellant vacate. Appellant ignored appellee's demands to vacate.

■■■■ Appellant's final point of error complains that the court erred in holding that appellee was not precluded by laches from asserting his right to enjoin appellant for breach of the lease. Laches is a defense grounded upon an unreasonable delay by one having legal or equitable rights in asserting them, and a good faith change of position by another to his detriment . because of the delay. City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.1964). With respect to appellant's defense of laches, the trial court concluded, in part, that appellee was not guilty of an inexcusable delay in asserting his right. What is a reasonable or unreasonable delay must necessarily depend much on the circumstances of each case. The facts surrounding appellee's transactions with appellant have been set out above, and under the circumstances we are not disposed to disturb the court's conclusion that appellee's delay was not unreasonable.

The judgment is affirmed.

Affirmed.

O'QUINN, Justice (dissenting).

Because I cannot agree with the majority that the trial court was correct in concluding that the lease "clearly prohibits" use of the premises "for live entertainment," I dissent and state my reasons.

The written lease, in broad terms, authorizes "traffic in food and beverages." By later agreement of the parties, the premises were converted, at Ferrari's considerable expense, from a pizza parlor to a supper club. It is common knowledge, which this Court can notice, that entertainment, live or mechanical, is frequently offered as an adjunct and as a customary part of the operation of a place where people eat. That custom was a firmly established part of the restaurant business prior to the making of the lease and must be considered within the contemplation of parties at the time, in the absence of an express prohibition in the writing.

The nature of the entertainment, not the fact it was "live entertainment," appears to be the real basis for the trial court's conclusions. But to enjoin all "live entertainment" prohibits not only entertainment of an exotic character, not universally accepted perhaps in the community, but also forbids the usual and customary entertainment represented in singers, banjo players, violinists, string bands, and pianists who perform fully clothed.

The judgment of the trial court should be modified so as not to enjoin the usual and customary live entertainment long recognized as an acceptable aspect of public eating places.